367 P.2d 274

Charles E. MINTON, Petitioner,

v.

INDUSTRIAL COMMISSION OF ARIZONA, and Western Knapp Engineering Company, Respondents.

No. 7109.

Supreme Court of Arizona,

En Banc.

Dec. 20, 1961.

H. S. McCluskey, Phoenix, for petitioner.

Frances M. Long, Phoenix, for respondent Industrial Commission of Arizona. Donald J. Morgan, James D. Lester, Edward E. Davis and C. E. Singer, Jr., Phoenix, of counsel.

---

## STRUCKMEYER, Chief Justice.

Petitioner, Charles E. Minton, in April of 1956, sustained personal injury by accident arising out of and in the course of his employment with Western Knapp Engineering Company. The accident was accepted as compensable by the Industrial Commission of Arizona and on October 20th, 1959, it entered an award predicated on the following findings:

"1. That applicant sustained personal injury by accident arising out of and in the course of his employment with the above-named defendant employer on April 17, 1956.

"2. That the average monthly wage of applicant prior to injury was the sum of $394.40.

"3. That applicant's physical condition became stationary on October 5, 1959 and is now stationary.

"4. That applicant is entitled to accident benefits through October 12, 1959.

"5. That applicant has sustained a 10% general physical functional disability as the result of said accident.

"6. That this Commission desires additional evidence of applicant's present earning capacity before determining an award for unscheduled permanent partial disability under A.R.S., Section 23-1044 C & D, 1956, and therefore finds that applicant should be continued in a temporary partial disability status through January 10, 1960 and is entitled to compensation therefor on the basis of 65% of the difference between applicant's average monthly wage prior to injury as set forth in Finding No. 2 hereof, and the wage applicant is able to earn through January 10, 1960."

From an order affirming the foregoing findings and the award predicated thereon petitioner applied to this Court for a writ of certiorari.

The first issue raised is whether there is sufficient evidence to reasonably support the Commission's findings 3 and 5. We first note that it has been a long standing rule to treat the Industrial Commission's findings of fact in the same way as the

Court treats those of a trial court. They will be sustained if supported by any substantial evidence even though the evidence is in conflict. Cain v. Industrial Commission, 87 Ariz. 40, 347 P.2d 699; McGill v. Industrial Commission, 82 Ariz. 36, 307 P.2d 1042.

■ As to finding 3, the Medical Advisory Board reported to the Commission:

"It is the opinion of this Board that the patient has reached a stationary point in recovery from his injury and that no further treatment is indicated."

As to finding 5, the Medical Advisory Board reported to the Commission:

"We believe this patient has a 10% general physical disability as a result of the injury of April 17, 1956 and the aggravation by the incident of December 8, 1958."

Thus, both findings 3 and 5 are supported by *competent evidence within the rule* enunciated above.

Petitioner in attacking findings 3 and 5 asserts that where psychoneurotic factors are in issue they are to be determined on the basis of legal cause and effect rather than medical cause. Here again, we think the evidence fairly sustains the Commission's finding. Dr. William B. McGrath, a specialist in neuropsychiatry who examined petitioner on two different occasions, testified:

"The Referee: Q. Dr. McGrath, do you agree with the medical advisory board that there is no psychiatric disability attributable to this accident? A. Yes.

"Q. Are there psychogenic factors present in this case? A. Yes.

"Q. Do you have an opinion as to whether or not these psychogenic factors, are the result of the accident of April 17, 1956, and, if so, what is your opinion? A. I have an opinion and the opinion is that the psychogenic factors are not a result of the accident.

"Q. Are the psychogenic factors disabling? A. No.

"Q. Did you find in your examination a particular or specific psychoneurosis present in this individual? A. No."

On recross examination Dr. McGrath further testified:

"Q. You say you found no psychoneuroris present. What particular term did you use to pinpoint the condition out of the welter of a dozen or more terms used. A. I would pinpoint it as a poor frame of mind toward his disability which the man has elected to adopt."

The Medical Advisory Board reported:

"It is the opinion of the Board that there is no psychiatric disability attributable to this accident."

The above quoted testimony along with the language used in the report to the Commission is well embraced within the purview of the decision in Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627, and findings 3 and 5 will not be disturbed.

■ Petitioner's assignment of error 1 relative to the insufficiency of evidence to support the medical opinions has not been argued, and is therefore deemed to have waived.

In finding 3 the Industrial Commission determined that petitioner's physical condition became stationary on October 5th, 1959. In order to fix petitioner's earning capacity under a permanent partial disability classification, it ordered payment of compensation to him for temporary partial disability until January 10th, 1960. Petitioner argues that the Commission may not limit the award for temporary partial disability to that date for the reason that the statute, A.R.S. § 23–1044, subd. A requires the Commission to pay temporary partial disability until such time as permanent partial disability for work is determined.

Petitioner relies heavily on the decision in Kennecott Copper Corp. v. Industrial Commission, 62 Ariz. 516, 158 P.2d 887, 888. There we said that it was the duty of the Industrial Commission in determining temporary partial disability to find the average monthly wage of applicant before the accident and the wage applicant was able to earn thereafter. Petitioner quotes repeatedly from headnote 14 that the Commission has the right to continue the hearing for that purpose "continuing applicant in the temporary total disability class." In effect he is asserting that while the Commission has the right to continue the hearing, if it does so, it has the duty to continue petitioner in the temporary disability class.

The headnote is at variance with what the Court actually said:

"If an employee, by reason of his injuries, is unable to procure any employment at his usual work, or at some some other gainful occupation, he *may be continued* in the temporary total disability class until some definite evidence is procured to determine what his wages will be." Kennecott Copper Corp. v. Industrial Commission, 62 Ariz. 516, 158 P.2d 887, 892. (Emphasis supplied.)

■ We do not construe the Kennecott case to support petitioner's position. It is not the petitioner's absolute right to have temporary partial disability payments until evidence of definite loss of wage is procured, rather the Commission may continue petitioner in such category at its discretion. We observe that in this jurisdiction headnotes are not prepared by the Court and, therefore, are not a part of the Court's decision.

Petitioner further relies heavily on his interpretation of the language used in Statute, A.R.S. § 23–1041, subd. A. That section provides that every employee "shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury." A.R.S. § 23–1044 establishes compensation for partial disability providing in subsection A thereof:

"*For temporary partial disability there shall be paid during the period thereof,* for not to exceed sixty months, sixty-five per cent of the difference between the wages earned before the injury and the wages which the injured person is able to earn thereafter." (Emphasis supplied.)

We agree with petitioner that by Section 23–1044, subd. A the Commission must pay temporary partial disability in the amount and for the length of time set forth in the statute if such condition exists. But the condition of temporary partial disability was by finding 3 determined to be stationary as of October 5th, 1959. On that date temporary disability came to an end and the Commission was no longer compelled to continue payment thereof. Petitioner's condition then became classified as permanent and the Commission was compelled to compute the disability on the basis of A.R.S. § 23–1044, subd. B and the subsections following insofar as they were applicable to the circumstances of this particular case.

In accordance with the Kennecott decision, the Commission had the power and it was within its discretion to either continue temporary partial disability payments or withhold such payments pending determination of a sum for permanent disability. As we said:

"There may be some difficulty in determining what monthly wages the applicant will be able to earn. This is a duty, however, which the law imposes upon the commission. It is under no compulsion to make an award until it is able to determine in some way what the wages of the employee will be." Kennecott Copper Corp. v. Industrial Commission, 62 Ariz. 516, 158 P.2d 887, 892.

Petitioner might have been continued in the temporary disability class past January 10, 1960 but he was not.

Petitioner discusses one additional point without assigning error. We think it sufficient to point out that claimed errors not assigned will not be reviewed. Jost v. Ross, 82 Ariz. 245, 311 P.2d 840; Chapman v. Salazar, 40 Ariz. 215, 11 P.2d 613.

The Award is affirmed.

BERNSTEIN, V. C. J., and UDALL, JENNINGS and LOCKWOOD, JJ., concur.