412 P.2d 740

Gladys NEBEL, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and J. W. Kieckhefer (K-Four Ranch), Respondents.

1 CA–IC 64.

Court of Appeals of Arizona.

April 4, 1966.

Rehearing Denied May 2, 1966.

Review Denied May 24, 1966.

Wilmer & Woodburn by Charles M. Wilmer, Chandler, for petitioner.

. . Robert K. Park, Chief Counsel by Dee-Dee Samet, Phoenix, for respondent The Industrial Commission of Arizona.

DONOFRIO, Judge.

This is a review by writ of Certiorari to determine the lawfulness of an Award and Findings of the Industrial Commission issued on July 12, 1965. Petitioner, Gladys Nebel, was awarded temporary compensation and accident benefits through July 14, 1964 and claiming to be disabled has never returned to any work since her accident.

Mrs. Nebel was employed as a cook by the K-Four Ranch and on September 8, 1963, while working, she slipped and fell on the kitchen floor landing forcibly in a sitting position with her left leg doubled under her and her right leg extended. No fracture was found on X-ray and the diagnosis was an acute lumbo-sacral sprain. She continually complained that because of the injuries she sustained she was unable to work. As time progressed she was hospitalized, examined and treated by various physicians and specialists. In February 1964 consulting doctors were unable to find any objective evidence of her severe subjective complaints. Additional studies and ex-

aminations were made with negative results. Petitioner persisted in her inability to work and on February 28, 1964 Dr. William B. McGrath, neurosurgeon and psychiatrist, performed a neuropsychiatric examination stating that unless some objective abnormality could be found she should have a final evaluation. This was accomplished and after additional studies the conclusion was reached that her complaints were not related to the accident and that she was able to return to work.

On March 24, 1964 the Commission put petitioner on a light work order which was timely protested. Thereafter at her physician's request she was seen by Dr. John Eisenbeiss who found no evidence of spinal involvement either from an objective or subjective standpoint. A Medical Advisory Board was recommended and they convened on July 6, 1964 making a complete examination and review of her case and finding that her condition was stationary. They recommended that the case be closed without any disability relative to the injury in question. The Commission made an Award on these recommendations. This was protested on the basis that no finding was made as to petitioner's mental condition. New hearings were held and on July 12, 1965 the Commission entered amended findings and award. It found that claimant has a functional impairment due to a mental condition which constitutes a general physical functional disability that is causally related to the industrial accident, and that her condition became stationary July 6, 1964. The Commission further found that neither the industrial injury nor the residual functional impairment prevents claimant from returning to work, that her failure to resume employment results from her conscious motivation and unwillingness to do so; and that therefore she has not suffered a loss of earning capacity within the meaning of A.R.S. § 23–1044, subsecs. C and D. This certiorari followed.

■ This Court reviews awards and findings of the Industrial Commission to determine if they are reasonably supported by the evidence. The findings of the Commission, if supported by sufficient competent evidence, will not be disturbed. Donaldson v. Industrial Commission, 2 Ariz. App. 172, 407 P.2d 111 (1965).

To better understand the issues before the court we set out the following findings which are objected to by the petitioner as not being supported by the evidence:

"7. That applicant has a functional impairment due to a mental condition, which constitutes a general physical functional disability; which condition is causally related to the accident of September 8, 1963.

8. That applicant's condition became stationary on July 6, 1964.

9. That neither the industrial injury nor the residual functional impairment related thereto prevent applicant from returning to her regular employment.

10. That applicant's failure to resume gainful employment is the result of her conscious motivation and unwillingness to do so; so therefore, said applicant has suffered no loss of earning capacity as a result of her injury of September 8, 1963 and is not entitled to an award therefor under the provisions of A.R.S., Section 23–1044, C & D, 1956."

Without belaboring this opinion with other evidence it is only necessary to set out the following few questions and answers given by Dr. McGrath which are in support of the findings:

"Q. Can you tell either from your findings and examination or from those findings reported by Dr. Neumann or taking into consideration the entire Medical Advisory Board report, Doctor, what was the extent of the Applicant's functional impairment?

A. I could use an arbitrary term and indicate 'mild' from what I can read in their comments."

\*　　\*　　\*　　\*　　\*　　\*

"Q. In the last sentence, (referring to Medical Advisory Board report) when they state that the case should be closed without any disability relative to the injury in question— I know you have been on several consultations, Doctor—are they ·saying that there is no mental or physical disability related to the accident in question?

A. Yes.

Q. How would you relate the last paragraph of the report and the conclusions of the board to this statement that her primary impairment at this time is of a functional nature?

A. I would relate it as they do, to the effect that the functional impairment is not either etiologically related or medically to the injury in question."

\* \* \* \* \* \*

"Q. It is your opinion, therefore, that the conclusion of the MAB is correct in that she has no disability as a result or relative to the injury in question?

A. Yes."

\* \* \* \* \* \*

"Q. Doctor, do you have an opinion as to how the mild functional impairment that you found affects Mrs. Nebel's ability to engage in various physical activities?
Is she limited in any way?

A. Yes, I have an opinion.

Q. Would you state that opinion?

A. In my opinion, she did not have an inability to engage in various physical activities but did not have the willingness or motivation or incentive to do so.

Q. This lack of willingness, Doctor, is this caused by both conscious and unconscious factors?

Is that your opinion?

A. Yes.

Q. Which is the overriding factor, in your opinion, if you have an opinion, the conscious or the unconscious?

A. I don't have an opinion."

In addition to Dr. McGrath's testimony we find the other medical evidence supporting the Commission. It was reiterated several times that petitioner's failure to resume gainful employment was the result of her conscious motivation and unwillingness to work. Although Dr. McGrath states there is also present an unconscious motivation to not work he is unable to give the extent thereof. The petitioner does not by this evidence meet the burden imposed upon her by law to show that she is suffering from that type of mental disorder or condition for which compensation would be allowed.

The Supreme Court in Chavarria v. Industrial Commission, 99 Ariz. 315, 409 P.2d 26 (1965) affirmed an award of The Industrial Commission denying petitioner's claim for compensation. The Commission found that neither the industrial injury nor any subsequent residual physical or functional disability causally related thereto prevents the petitioner from returning to his previous employment. In that case there was a dispute in the medical evidence but one doctor, whose testimony the Commission ultimately adopted, was of the opinion that though petitioner has both an unconscious and conscious motivation not to work, the conscious unwillingness to return to work was overriding. In the case at bar there is evidence from which the Commission could find that it is petitioner's conscious unwillingness to work that prevents her from returning to her regular employment. And in the case of Sanchez v. Industrial Commission, 96 Ariz. 19, 391 P.2d 579 (1964) the medical testimony could not establish whether petitioner's alleged mental condition was unconsciously or consciously motivated. The doctors were of

**174**

the opinion that the petitioner "has not put forth his best effort in trying to recuperate". The Supreme Court stated that "[t]he evidence as to a psychoneurosis or hysteria derived from the accident is inconclusive." [1] We feel the same situation exists in the case at bar.

We recognize by way of dictum in Lewis v. Industrial Commission, 2 Ariz.App. 522, 410 P.2d 144 (1966) that a petitioner can preclude himself compensation by consciously resisting rehabilitation.

Petitioner objects, as unsupported by the record, to the finding that her condition became stationary on July 6, 1964.

The Medical Advisory Board saw petitioner on July 6, 1964. The board consisted of six doctors, two of whom were orthopedists, two neurosurgeons one of whom also specialized in psychiatry and two general practitioners. After studies and examinations this board found petitioner's condition stationary, stating no further examinations or treatments were indicated. Medical evidence in the record at that time showed that no more medically could be done for her, including psychiatric treatment.

We have read the record and there is evidence to support the findings and award of the Industrial Commission.

Award Affirmed.

CAMERON, Acting C. J., and THOMAS TANG, Superior Court Judge, concur.

NOTE: Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge THOMAS TANG was called to sit in his stead and participate in the determination of this decision.

1. The award of the Industrial Commission was set aside on other grounds.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's