481 P.2d 545

Maria A. ARAGON, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona,
Respondent,

Oliver's Laundry & Dry Cleaning Company,
Respondent Employer,

State Compensation Fund, Respond-
ent Carrier.

No. 1 CA–IC 512.

Court of Appeals of Arizona,
Division 1,
Department B.

March 8, 1971.

Thomas E. Johnson, Tucson, for peti-
tioner.

William C. Wahl, Jr., Counsel, Donald L.
Cross, Former Chief Counsel, Phoenix, for
respondent Industrial Commission of Ari-
zona.

Robert K. Park, Chief Counsel, by Dee-
Dee Samet, Phoenix, for respondent Car-
rier State Compensation Fund.

EUBANK, Judge.

This matter is before us by writ of
certiorari to review the lawfulness of an
award of the Industrial Commission of
Arizona. The law as it existed prior to
amendment on January 1, 1969 is applicable.

The petitioner had worked for Oliver's
Laundry & Dry Cleaning Co. of Tucson,
Arizona, as a press operator for one year
prior to her accident on December 16, 1968.
On that day, at approximately 11:00 A.M.,
she pressed the button to bring the press
down and reached for another article in
order to continue ironing. Without warn-
ing the press rose suddenly, hitting her
thumb, and fracturing it. Complications
resulted which have culminated in two oper-
ations and continued intermittent pain for
the petitioner.

On November 20, 1969 the respondent-
Commission made its award finding that
petitioner was entitled to receive total tem-
porary disability from December 19, 1968
through October 19, 1969 in the sum of
$1,548.38; and compensation for partial
temporary disability from October 20, 1969

through October 30, 1969 in the sum of $55.84. In addition, the petitioner was awarded permanent partial disability equal to 70% loss of function of the right thumb in the sum of $118.78 each month for ten and one-half months.

Petition for hearing was timely filed and the formal hearing was held on April 29, 1970 at respondent's office in Tucson. Following this hearing, the respondent made its award affirming the award of November 20, 1969 except that it increased the permanent partial disability award period from ten and one-half months to fourteen months. Petitioner timely filed her petition for review by this Court.

Petitioner raises just one question on appeal. It is substantially as follows:

"Did the Industrial Commission of Arizona erroneously make a Finding and Award that the condition of the Petitioner-Claimant's major hand was stationary, * * *."

The term "stationary" as used in the Arizona Workmen's compensation laws has not been statutorily defined, nor have we been able to find any in-depth discussion of the term in Arizona case law. However, many Arizona appellate decisions have considered, in various contexts, whether an injured employee's condition has become "stationary". McAllister v. Industrial Commission, 88 Ariz. 25, 352 P.2d 359 (1960); Lee v. Industrial Commission, 71 Ariz. 171, 224 P.2d 1085 (1950); Nebel v. Industrial Commission, 3 Ariz.App. 171, 412 P.2d 740 (1966); Norris v. Industrial Commission, 11 Ariz.App. 50, 461 P.2d 694 (1969); Sims v. Industrial Commission, 10 Ariz.App. 574, 460 P.2d 1003 (1969); Timmons v. Industrial Commission, 83 Ariz. 74, 316 P.2d 935 (1957); Chavarria v. Industrial Commission, 99 Ariz. 315, 409 P.2d 26 (1965); and Minton v. Industrial Commission, 90 Ariz. 254, 367 P.2d 274 (1961). The thread running through all of these decisions is that the term "stationary" refers to that time when the physical condition of the employee resulting from the industrial injury has reached a relatively stable status so that nothing further in the way of medical treatment is indicated to improve that condition. We think that the meaning of the term "stationary" as used in workmen's compensation laws is well summarized by the Oregon Supreme Court in Dimitroff v. State Industrial Accident Commission, 209 Or. 316, 306 P.2d 398 (1957), as follows:

"We believe that the term 'stationary', as applied to the condition of an injured workman, has become a 'term of art' * * *."

"But we think it probable that in the administrative usage a workman's condition is considered 'stationary' when he reaches the stage at which his restoration to a condition of self-support and maintenance as an able-bodied workman is found by the Commission on the basis of expert medical opinion to be as complete as it can be made by treatment. Undoubtedly when that stage is reached it will ordinarily mark the time at which the period of temporary total disability will be declared to be at an end and an award of permanent partial disability will be made as a final settlement." (306 P.2d 398, at 406, 407).

Applying these principles to the evidence before the Commission, we note that both medical witnesses testified that petitioner's condition was stationary. In an answer to a question concerning his use of the word "stationary" Dr. Tanz testified as follows:

"Stationary means that we feel that her condition will not change for the better or worse. [It] Has nothing to do with medical science. We feel that this is the way she is going to be, and that's the way I feel she is going to be. That means she is stationary, her condition will not change."

The conclusion by a medical expert witness that a physical condition resulting from an injury is "stationary" or "not stationary" constitutes his medical opinion and conclusion based upon the particular medical facts of the case under consideration. It being

an expert medical opinion, the Commission is bound by the opinion unless there are conflicting medical opinions or the testimony was equivocal. Helmericks, Jr. v. Airesearch Manufacturing Company, 88 Ariz. 413, 357 P.2d 152 (1960); Cross v. Industrial Commission, 81 Ariz. 222, 303 P.2d 710 (1956). An example of the application of the medical opinion "stationary" is provided by our Supreme Court in Minton v. Industrial Commission, 90 Ariz. 254, 367 P.2d 274 (1961), where the petitioner suffered an industrial injury and was awarded "temporary partial disability" benefits under A.R.S. § 23-1044, subsec. A. The award was terminated following a hearing wherein the medical testimony was that the injury was "stationary". The petitioner there contended that he was entitled to receive continued temporary partial disability benefits because § 23-1044, subsec. A required the Commission to pay temporary partial disability payments until such time as "permanent partial disability" for work was determined. The Court rejected petitioner's contention and said at page 258, 90 Ariz., at page 277, 367 P.2d:

"We agree with petitioner that by Section 23-1044, subd. A the Commission must pay temporary partial disability in the amount and for the length of time set forth in the statute if such condition exists. But the condition of temporary partial disability was by [Commission] finding [of fact] 3 determined to be stationary as of October 5th, 1959. On that date temporary disability came to an end and the Commission was no longer compelled to continue payment thereof. Petitioner's condition then became classified as permanent and the Commission was compelled to compute the disability on the basis of A.R.S. § 23-1044, subd. B and the subsections following insofar as they were applicable to the circumstances of this particular case.

"In accordance with the Kennecott [Copper Corp. v. Industrial Commission, 62 Ariz. 516, 158 P.2d 887 (1945)] decision, the Commission had the power and it was within its discretion to either continue temporary partial disability payments or withhold such payments pending determination of a sum for permanent disability. * * *"

■ Our review of the record shows that both Dr. Tanz and Dr. Burkhardt testified that in their opinion the physical condition resulting from the injury was stationary. No other medical evidence disputes their opinion. In our opinion the record fully supports the conclusion of the respondent.

■ Petitioner further argues that the condition of her hand cannot be stationary when both Dr. Tanz and Dr. Burkhardt testified that another operation on her hand was possible. Both doctors did so testify, but both recommended against it because of a "sympathetic distrophy" previously experienced in the right hand by the petitioner in the prior operation. They testified that they discussed the possibility of another operation, which included the danger of damaging the fingers through the process of "sympathetic distrophy", with the petitioner and she rejected it. At the formal hearing, on recross-examination, the petitioner was questioned and responded as follows:

"Q [Respondent] Mrs. Aragon, you heard the testimony of the various doctors here?

A Yes.

Q Regarding your hand. Do you want that operation?

A Dr. Tanz told me that he didn't recommend it, and I will take his word for it. He treated me both times, and he told me that he didn't think it was good."

She later testified that she wanted to think more about it.

It is our opinion that the evidence does not support the petitioner's contention that a further operation was required in this matter as a predicate to the medical opinion that the injury was "stationary". In essence, the same argument was made and

rejected in Minton v. Industrial Commission, supra.

Finally, petitioner argues that the record contains no evidence that the petitioner's injury became stationary on October 30, 1969. At page 49 of the transcript we find the following testimony by Dr. Tanz:

"Q Dr. Tanz, at the present time, then is it your testimony, and is this how you felt on February 10th, 1970, and also on October 30th, 1969, that Mrs. Aragon's condition is stationary and no further treatment is indicated at this time?

A That is right."

In addition, the report by Dr. Tanz to the respondent dated October 30, 1969 states that the petitioner was examined on that day and discharged from care with an impairment equivalent to a 70% loss of the right major thumb. In our opinion the record supports the award.

The award is affirmed.

JACOBSON, P. J., and HAIRE, J., concur.