48

500 P.2d 308

**EMPLOYERS MUTUAL LIABILITY IN-
SURANCE COMPANY OF WISCONSIN,
and Saga Food Service, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of
Arizona, Respondent,**

**Willie P. Contreras, Respond-
ent Employee.**

**No. 1 CA–IC 624.**

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 22, 1972.

Rehearing Denied Sept. 21, 1972.

Review Granted Oct. 24, 1972.

Browder & Gillenwater, P.C. by Robert
W. Browder, David W. Adler, Phoenix, for
petitioners.

William C. Wahl, Jr., Chief Counsel, The
Industrial Commission of Arizona, Lin-
dauer & Goldberg, P.A. by Mark H. Gold-
berg, William B. Revis, Phoenix, for re-
spondent employee.

EUBANK, Judge.

We issued our writ of certiorari to re-
view the lawfulness of the findings and
award of The Industrial Commission that
the respondent's medical condition was not
stationary.

The respondent suffered an industrial in-
jury to his back on February 10, 1969, while
lifting a box of dishes in the course of his
employment. His claim was accepted by
the petitioner for benefits. In August 1969,
Marion Peterson, M.D., orthopedic sur-
geon, performed a laminectomy on the re-
spondent and he recovered sufficiently to
be released to a light work status on Octo-
ber 30, 1969. On the following day the re-
spondent returned to work for his employer
as an assistant manager of a snack bar at
Arizona State University, and continued
in that capacity until March 17, 1970,
when he was laid off because he was un-
able to perform the duties required. On
February 19, 1970, the petitioner issued its
*Notice of Claim Status* terminating the re-
spondent's temporary compensation as of
October 30, 1969. Respondent protested
the notice and the resultant hearing was
held at the Commission in Phoenix on De-
cember 2, 1970. Following the hearing, the

hearing officer made certain findings which are contested by the petitioners. They are:

"3. That applicant's condition is not yet stationary and he is therefore entitled to medical, surgical and hospital benefits, as provided by law, from February 10, 1969 until his condition becomes stationary.

\*   \*   \*   \*   \*   \*

"7. That Howard P. Aidem, M.D., testified that he first examined applicant in May, 1970, and in his opinion, although applicant's condition was not yet stationary, applicant was capable of performing some type of light work within certain physical limitations; said limitations would include restricted lifting, up to 25 pounds and no bending but that applicant would be able to stoop and walk without limitation.

\*   \*   \*   \*   \*   \*

"14. In the present case applicant was injured on February 10, 1969 and was returned to a light work status on October 30, 1970; he worked on a light work status at his regular wage from October 31, 1970 (sic) [1969] through March 17, 1970, on which date he was laid off; that applicant's condition is not yet stationary."

The hearing officer then, in part, made the following award:

"APPLICANT IS HEREBY
AWARDED:

1. Medical, surgical and hospital benefits, as provided by law, from February 10, 1969 until his condition becomes medically stationary."

Review was requested by the petitioners and the Commission affirmed the award.

The petitioners contend that the only evidence in the record is that the respondent's physical condition became medically stationary prior to the hearing, and consequently the findings and award set out above are erroneous and unlawful. Reviewing the record, we agree, and must, therefore, set the award aside.

In Aragon v. Industrial Commission, 14 Ariz.App. 175, 481 P.2d 545 (1971) we discussed the significance of the medical opinion that an injury was or was not "stationary" in these terms:

" . . . The conclusion by a medical expert witness that a physical condition resulting from an injury is 'stationary' or 'not stationary' constitutes his medical opinion and conclusion based upon the particular medical facts of the case under consideration. It being an expert medical opinion, the Commission is bound by the opinion unless there are conflicting medical opinions or the testimony was equivocal. Helmericks, Jr. v. Airesearch Manufacturing Company, 88 Ariz. 413, 357 P.2d 152 (1960); Cross v. Industrial Commission, 81 Ariz. 222, 303 P.2d 710 (1956). An example of the application of the medical opinion 'stationary' is provided by our Supreme Court in Minton v. Industrial Commission, 90 Ariz. 254, 367 P.2d 274 (1961), where the petitioner suffered an industrial injury and was awarded 'temporary partial disability' benefits under A.R.S. § 23–1044, subsec. A. The award was terminated following a hearing wherein the medical testimony was that the injury was 'stationary'. The petitioner there contended that he was entitled to receive continued temporary partial disability benefits because § 23–1044, subsec. A required the Commission to pay temporary partial disability payments until such time as 'permanent partial disability' for work was determined. The Court rejected petitioner's contention and said at page 258, 90 Ariz., at page 277, 367 P.2d:

'We agree with petitioner that by Section 23–1044, subd. A the Commission must pay temporary partial disability in the amount and for the length of time set forth in the statute if such condition exists. But the condition of temporary partial disability was by [Commission] finding [of fact] 3 determined to be stationary as of October 5th, 1959. On that date temporary disability came to an end and the Commission was no longer com-

pelled to continue payment thereof. Petitioner's condition then became classified as permanent and the Commission was compelled to compute the disability on the basis of A.R.S. § 23-1044, subd. B and the subsections following insofar as they were applicable to the circumstances of this particular case.

'In accordance with the Kennecott [Copper Corp. v. Industrial Commission, 62 Ariz. 516, 158 P.2d 887 (1945)] decision, the Commission had the power and it was within its discretion to either continue temporary partial disability payments or withhold such payments pending determination of a sum for permanent disability. * * *' " (14 Ariz.App. at 176–177, 481 P.2d at 546–547).

At the December 1970 hearing, Howard P. Aidem, M.D. and Marion Peterson, M.D. testified. They are both orthopedic surgeons and their testimony constitutes the only medical testimony in the record. Dr. Aidem testified:

"Q Have you any opinion as to whether or not he should be on any kind of other status than not working?

"A [Dr. Aidem] Well, I think he should be capable of doing something, yes. He doesn't appear to be physically totally incapable of doing anything. However, he describes persistent pain. And this was the main basis for my request for further evaluation, or at least the final evaluation for purposes of estimate of general disability. In the times I have seen him, his condition appears to be reasonably stationary, or perhaps somewhat worse on the second occasion in September. He hasn't changed since then. And I have nothing personally to offer him. And I am hoping that someone else would see him independently and make the same estimate."

Later he testified:

"Q I take it you are not convinced that his condition is stationary though?

"A Actually I think his condition is stationary. From my point of view orthopedically, I think it is stationary because of the period of time since his last surgery and the fact that his complaints didn't seem to be particularly different. I requested a further evaluation to be more or less assured of this fact, and also perhaps to see if Dr. Atkinson had any additional suggestions. But I don't really have any treatment plans for him."

Dr. Peterson testified:

"Q So it was not medically stationary, is that correct?

"A [Dr. Peterson] Medically, when you say medically stationary, we assume it hasn't changed? And it hasn't changed any for months. So I guess we would have to consider it medically stationary."

■ The respondent contends that because Dr. Aidem's testimony showed that he had scheduled respondent for an examination with Dr. James Atkinson, a neurologist, in order to determine the reason for the respondent's continued complaints, that his testimony regarding "stationary" must be disregarded. In this contention respondent misconstrues the nature of such a medical opinion. In our opinion Aragon v. Industrial Commission, supra, we said:

"The term 'stationary' as used in the Arizona Workmen's compensation laws has not been statutorily defined, nor have we been able to find any indepth discussion of the term in Arizona case law. However, many Arizona appellate decisions have considered, in various contexts, whether an injured employee's condition has become 'stationary' . . . . [Citations omitted] The thread running through all of these decisions is that the term 'stationary' refers to that time when the physical condition of the employee resulting from the industrial injury has reached a relatively stable status so that nothing further in the way of medical treatment is indicated to improve that condition. We think that the meaning of the term 'stationary' as used in workmen's compensation laws is well summarized by the Oregon Supreme Court in

Dimitroff v. State Industrial Accident Commission, 209 Or. 316, 306 P.2d 398 (1957), as follows:

'We believe that the term "stationary", as applied to the condition of an injured workman, has become a "term of art" * * *.'

'But we think it probable that in the administrative usage a workman's condition is considered "stationary" when he reaches the stage at which his restoration to a condition of self-support and maintenance as an able-bodied workman is found by the Commission on the basis of expert medical opinion to be as complete as it can be made by treatment. Undoubtedly when that stage is reached it will ordinarily mark the time at which the period of temporary total disability will be declared to be at an end and an award of permanent partial disability will be made as a final settlement.' (306 P. 2d 398, at 406, 407)." (14 Ariz.App. at 176, 481 P.2d at 546).

Under this definition and the testimony of the two doctors, we do not see how the Commission could disregard the medical opinions before it. Respondent argues that these doctors testified that the injury was stationary only from an orthopedic point of view.

Both doctors are highly trained specialists in orthopedics which is defined as the branch of surgery which is specially concerned with the preservation and restoration of the function of the skeletal system, its articulations, and associated structures. Dorland's Illustrated Medical Dictionary (24th ed. 1965). They were certainly testifying in the area of their competence—whether the respondent's spine injury of February, 1969, was stationary or not. Furthermore, no motion for a continuance was made by the respondent to continue the hearing to await the report of Dr. Atkinson. In addition although Dr. Aidem had scheduled the respondent for an examination, it was clearly his opinion that the respondent's condition was stationary.

 It is therefore our opinion that the Commission is bound by the testimony of the two medical doctors on the issue of "stationary" and that the findings and award must be set aside.

On return of the file to the Commission, we point out that their findings and award of January 26, 1971, contain an obvious clerical error in that it affirms the December 9, 1970 award for a "Scheduled Permanent Partial Disability" when no such award was made.

Furthermore, while we do not deem it necessary to reach the second question raised on review since the award is set aside, we do point out that we stated in Hartford Accident and Indemnity Co. v. Industrial Commission, 15 Ariz.App. 177, 487 P.2d 23 (1971) that medical testimony may be competent at a hearing before the Commission to determine the physical limitations imposed upon a claimant in relation to his job and earning capacity.

The award is set aside.

HAIRE, C. J., Division 1, and JACOBSON, J., concur.