905 P.2d 548

Ivan TSOSIE, Petitioner Employee,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Safeway Stores, Incorporated, Respondent Employer/Insurance Carrier.

No. 2 CA–IC 94–0041.

Court of Appeals of Arizona, Division 2, Department B.

June 13, 1995.

Review Denied Nov. 21, 1995.

**540**

Tretschok, McNamara & Clymer, P.C. by Brian I. Clymer, Tucson, for petitioner Employee.

The Indus. Com'n of Ariz. by Anita R. Valainis, Chief Counsel, Phoenix, for respondent.

Bury, Moeller, Humphrey & O'Meara by J. Michael Moeller and Pamela Treadwell-Rubin, Tucson, for respondent employer/carrier.

## OPINION

DRUKE, Chief Judge.

In this petition for special action review, Ivan Tsosie challenges the Industrial Commission award finding his condition to be stationary without permanent impairment. The facts, taken in the light most favorable to affirming the award, *Perry v. Industrial Commission,* 112 Ariz. 397, 542 P.2d 1096 (1975), are as follows.

Tsosie worked for Safeway Stores as a stock clerk when he developed soreness and numbness in his arms. His claim for workers' compensation was accepted and he was placed on light work duty straightening rather than stocking shelves. In August 1993, Tsosie came under the care of Dr. Arnold Arem, a hand surgery specialist. Dr. Arem diagnosed work-related ischemic flexor tendon irritation in both arms and, in lieu of surgery, recommended modifications in his work activities including not lifting heavy milk crates or weight over ten pounds, not cashiering for more than thirty minutes at a time with a five-minute break, and wearing wrist splints.

A month later, when the condition persisted, Dr. Arem recommended further work restrictions as well as physical therapy. By November the condition appeared to have subsided somewhat and Dr. Arem released Tsosie to work with permanent restrictions. The carrier then closed the claim effective November 1993 because the "[i]njury resulted in no permanent disability," but authorized payments for supportive care. The following month, in response to Dr. Arem's recommendation that he find an occupation less stressful to his arms, Tsosie cut his work hours from 40 to 20 per week and began taking college courses toward a degree in teaching.

When in February 1994 his condition persisted, Tsosie requested a hearing on the closure of his claim. A hearing was held in July at which Dr. Arem was the sole expert witness. Following his testimony that Tsosie continued to display some symptoms but that "he had had the maximum benefit of non-operative treatment," that the condition was expected to resolve without surgery, and that it was expected to resolve without permanent residuals, the administrative law judge (ALJ) issued an award finding Tsosie's condition to be stationary as of December 27, 1993, with no permanent impairment, and ordering supportive care as recommended by Dr. Arem. The award was affirmed upon administrative review and this request for special action review followed.

Tsosie argues first that because the evidence established that he was still symptomatic, required further supportive care, and was expected to improve, the ALJ erred in finding as a matter of law that his condition was stationary. Such a finding marks the time when partial temporary disability benefits cease and a determination is made as to the extent of any residual permanent disability. *Employers Mutual Liability Insurance Co. v. Contreras,* 109 Ariz. 383, 386, 509 P.2d 1030, 1033 (1973). The parties' dispute thus concerns the definition of "stationary." The carrier urges adoption of the definition used by the court of appeals in *Home Insurance Co. v. Industrial Commission,* 23 Ariz.App. 90, 94, 530 P.2d 1123, 1127 (1975), that a claimant's condition is stationary when it "has reached a 'relatively stable status' so that nothing further in the way of medical treatment is indicated to improve that condition." Tsosie, however, contends that the

definition adopted by the supreme court in *Employers Mutual* controls. There the court defined "stationary" as the time when a claimant's "disability ceases to decrease and his physical condition ceases to improve." 109 Ariz. at 386, 509 P.2d at 1033.

The *Employers Mutual* definition, however, has not been used beyond the factual context of that case, whereas the *Home Insurance* definition has been used both before and since, with apparent approval by the supreme court. *See, e.g., Janis v. Industrial Commission,* 27 Ariz.App. 263, 553 P.2d 1248 (1976); *Aragon v. Industrial Commission,* 14 Ariz.App. 175, 481 P.2d 545 (1971). Moreover, that definition, which first appeared in *Aragon,* was arrived at by the court's analysis of the use of the term "stationary" as it had previously appeared in both supreme court and court of appeals cases as far back as 1950. *Aragon,* 14 Ariz.App. at 176, 481 P.2d at 546. *See, e.g., Minton v. Industrial Commission,* 90 Ariz. 254, 367 P.2d 274 (1961); *Lee v. Industrial Commission,* 71 Ariz. 171, 224 P.2d 1085 (1950) (employees found to be stationary, at least in part, because they were no longer in need of further medical treatment).

■ Finally, contrary to Tsosie's contention, the definition contained in *Home Insurance* is supported by Professor Larson:

The fact that some treatment is still necessary, such as physical therapy or drugs, does not necessarily rule out a finding that the condition has become stabilized, if the underlying condition causing the disability has become stable and if nothing further in the way of treatment will improve that condition.

A. Larson, *The Law of Workmen's Compensation* § 57.12(c) (1992). Applying that definition to this case, Dr. Arem was clearly of the opinion that there is nothing further in the way of medical treatment which would improve Tsosie's condition at this time. His condition is, therefore, stationary. That it may improve with the passage of time or the restriction of work activities would change this result only if time or work restrictions are considered medical treatment. We are aware of no authority for this proposition.

■ Tsosie argues next that if his condition is stationary, it must also be permanent. Dr. Arem testified that Tsosie had no permanent impairment related to the industrial injury. He also testified:

Given ... adequate rest, he ought to be able to resume normal activities without those symptoms. My feeling from the beginning was that the level of severity of this problem was such that it could entirely reverse. The numbness could go away, the flexor tendon problems could go away if there were a really significant about face in physical activities.

And, it was because Ivan was interested in pursuing a career outside of Safeway that I felt there was at least a possibility of having the symptoms resolve without the need for surgical treatment. But that's the only specific treatment there is for this, other than what we've already done.

\* \* \* \* \* \*

I think that it is likely that if he went back to doing exactly the same work that he was doing when all these problems developed, they would all develop again. It just isn't smart, it seems to me, for him to do that. So, my recommendation is, be smart, don't do it.

\* \* \* \* \* \*

And I think that's a permanent recommendation, not to do that.

According to Dr. Arem, therefore, while Tsosie's condition is not permanent, neither has it resolved completely, nor is it likely to resolve if he goes back to stocking shelves full time. From this, Tsosie argues that he is entitled to a permanent disability award. We disagree.

■ A medical finding of permanent impairment, i.e., anatomic or functional loss, is a prerequisite to the legal finding of permanent disability, i.e., reduction in ability to engage in gainful activity. *See Smith v. Industrial Commission,* 113 Ariz. 304, 305 n. 1, 552 P.2d 1198, 1199 n. 1 (1976); *Cassey v. Industrial Commission,* 152 Ariz. 280, 731 P.2d 645 (App.1987). Here, the only medical evidence was that Tsosie has no permanent impairment associated with the industrial injury and, thus, the ALJ was correct in

awarding no permanent disability. Tsosie's contention that the imposition of permanent work restrictions is tantamount to a finding of permanent impairment is unsupported by any authority.

Finally, we reject Tsosie's further argument that the award of supportive care has a preclusive effect on the determination of permanent impairment or disability. *See Capuano v. Industrial Commission*, 150 Ariz. 224, 722 P.2d 392 (App.1986) (supportive care payments do not constitute carrier's acceptance of liability for claimant's condition or bar its request for later determination whether condition is causally related to industrial injury).

The award of September 8, 1994, is affirmed.

ESPINOSA, P.J., and HATHAWAY, J., concur.