NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

C2 ENTERPRISES, LLC, *Petitioner Employer*,

BERKSHIRE HATHAWAY HOMESTATE COMPANIES, *Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

NORMA MONGE, *Respondent Employee*.

No. 1 CA-IC 20-0023
FILED 3-16-2021

Special Action - Industrial Commission
ICA Claim No. 20173-400254
Carrier Claim No. 44035523
The Honorable Amy L. Foster, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Jardine, Baker, Hickman & Houston PLLC, Phoenix
By Stephen C. Baker
*Counsel for Petitioner Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent, ICA*

Barton Baker Attorney at Law, Yuma
By Barton L. Baker
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1 Respondents C2 Enterprises, LLC ("C2") and Berkshire Hathaway Homestead Companies ("Berkshire") appeal an award of the Industrial Commission of Arizona ("ICA") rejecting closure of Petitioner Norma Monge's claim. The ICA found that Monge required surgery after Berkshire closed the claim. Because evidence supports the ICA's finding that surgery was reasonably necessary, we affirm the award.

**BACKGROUND**

¶2 While working for C2 in October 2017, Monge sustained a wrist injury when a cart she was pushing got out of her control, hit a wall, and bounced backward. The cart handle struck her right hand, hyperextending her wrist. For about a month, Monge treated the injury herself, but she eventually sought medical help because it was not healing. The ICA accepted her worker's compensation claim. She was treated by various doctors throughout 2018, transferring to the Arizona Center for Hand to Shoulder Surgery ("the Center"), primarily under the care of Dr. Mihn Nguyen, in November 2018. At that point, she had two diagnostic assessments of her right arm: (1) complex tear of the triangular fibrocartilage ("TFC" or "TFCC") of the right wrist and (2) cubital tunnel syndrome on the right arm, an elbow-related condition. Office visit notes from January 2019 show that the TFCC condition was symptomatic at that time.

¶3 In October 2018, just before she transferred care to the Center, Peter Campbell, M.D., performed an Independent Medical Examination ("IME") of Monge at Berkshire's request. Dr. Campbell is an orthopedic surgeon with board certification in hand and upper extremity reconstruction. Apart from examining Monge, Dr. Campbell also reviewed her existing medical records. He found that her right wrist had suffered a

contusion with "possible small TFC tear" and that she had "right cubital tunnel syndrome." He only related the TFC tear to the work injury and concluded that the tear was "not significantly symptomatic at this time nor hindering her activities" because it had "responded favorably to conservative treatment." He also concluded that additional treatment was not needed unless her wrist symptoms worsened. In that event, Dr. Campbell opined that "she would be a candidate for corticosteroid injection or arthroscopic debridement of the TFC tear." Given his findings, Dr. Campbell concluded that Monge had no permanent impairment and no need for work restrictions, and only recommended additional treatment for the non-work-related cubital tunnel syndrome.

¶4            Based on the IME results, Berkshire closed the claim with no permanent impairment as of October 2018. Challenging the closure, Monge requested a hearing, asserting she needed further treatment.

¶5            In January 2019, Monge saw Dr. Nguyen. He noted that she previously received an injection in the TFC area that improved her symptoms but did not resolve them completely. Dr. Nguyen discussed treatment alternatives with Monge, as reflected in his office-visit notes:

> We discussed our options, which included conservative management including some more therapy, nerve glides, joint mobilization versus surgery. Surgery would entail arthroscopy of the wrist. I would likely debride the radial-sided tear to stable edges and still survey the remainder of the ligaments [to] make sure there is nothing else that needs to be done and then cubital tunnel release.

¶6            Monge agreed to undergo outpatient surgery, which took place in April 2019, without coverage by Berkshire. Dr. Nguyen's operative note includes recitation of a discussion he had with Monge:

> I discussed risks, benefits, and alternatives of surgical intervention with the patient. I let her know that with a TFCC tear, I am not sure if that is what is really causing her pain, but because she has the pathology with the wrist pain and a positive physical exam, since I was going to release her cubital tunnel, I would also perform a wrist arthroscopy and likely debride the radial-sided TFCC tear. I let her know I would leave the possibility open to also repair it.

His operative notes show that he debrided the "full-thickness" TFC tear but did not repair it.

¶7          Beginning June 2019, Dr. Jonathan Yang at the Center took over Monge's care. He noted that she continued to have pain in her right arm but could not conclusively attribute it to the work injury or the elbow condition.

¶8          Dr. Campbell was the only medical expert witness to testify at the hearing on the closure of Monge's claim. He testified in support of his IME, which was over a year out of date. He agreed with the cubital-tunnel-syndrome diagnosis but opined that it was not related to the work injury. He stated that the wrist injury was a sprain and TFC tear that had resolved. Because he found the TFC tear to be asymptomatic at the time he conducted the IME, he recommended no further treatment for the injury. He testified that he reviewed the April 2019 operative report after issuing the IME report, but his opinion had not changed. Concerning the TFC tear surgery, the following exchange occurred with Dr. Campbell:

> Q. And then what about the right wrist arthroscopy? Was that reasonably necessary to treat the industrial injury?
>
> A. That's a reasonable surgical procedure for that diagnosis. My only concern is that she truly was not significantly symptomatic when I saw her, and I would not have suggested surgery unless her symptoms became significantly worse in the interval before Dr. Nguyen evaluated her.
>
> Q. Looking at Dr. Nguyen's records and the records from Dr. Yang, who took over her care, do you -- does it – do these records change your opinion at all as to whether or not she was stationary when you saw her?
>
> A. No. She was stationary when I saw her.

¶9          Thus, Dr. Campbell opined that the surgery Dr. Nguyen performed was reasonable if Monge was "significantly symptomatic." This opinion is consistent with his IME report, in which he stated that TFC tear surgery would be indicated if her symptoms worsened. At the hearing, he testified specifically that Monge was asymptomatic when he examined her in October 2018, almost 18 months before.

¶10          The administrative law judge issued an award rejecting the October 2018 closure of the claim because Monge required the surgery performed in April 2019:

Dr. Campbell related the TFCC tear to the industrial injury and noted that treatment may be necessary if it becomes symptomatic in the future. The ulnar injury at the elbow is not related. Dr. [Nguyen]'s notes indicate that [Monge] was having symptoms in the ulnar side of her wrist that was relieved somewhat by an injection. He therefore proceeded with surgery in the area. Dr. [Nguyen]'s notes do not discuss the relationship between the surgery and the industrial injury. To the extent that there is a conflict in the medical records, Dr. Campbell's opinions and conclusion are adopted as more probably correct. However, Dr. [Nguyen]'s opinion that the TFCC tear required surgery is adopted as more probably correct. As [Monge] has not yet fully recovered from the surgery, the claim must remain open.[1]

When all of the evidence is considered in its entirety and upon a resolution of the conflicts in the evidence it is found herein that [Monge] has established by preponderance of the evidence the need for further active medical care and the need for surgery on the TFCC tear. The ulnar nerve damage at the elbow is not related to the industrial injury. [Monge] is thus entitled to benefits pursuant to the Workers' Compensation Act of the State of Arizona.

¶11        Respondents requested administrative review and, when that review affirmed the award, filed a special-action appeal to this court, arguing that the evidence does not support the finding that the TFC tear surgery was required.

## DISCUSSION

¶12        Closure of a claim is appropriate when a claimant's condition has become stationary. *Home Ins. Co. v. Indus. Comm'n*, 23 Ariz. App. 90, 92 (1975). A claimant's condition is stationary when "the physical condition . . . resulting from the industrial injury has reached a relatively stable status so that nothing further in the way of medical treatment is indicated to improve that condition." *Aragon v. Indus. Comm'n*, 14 Ariz. App. 175, 176, (1971).

---

1   We interpret the references to Dr. Yang to include the Center's other physician, Dr. Nguyen, who performed Monge's surgery.

¶13 We will affirm an award if the evidence reasonably supports it after reviewing the evidence in a light most favorable to sustaining the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002). The administrative law judge has the primary responsibility to resolve conflicts in medical opinion evidence. *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988); *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 609, ¶ 25 (App. 2000). We defer to the administrative law judge's resolution of conflicting evidence and affirm findings if any reasonable theory of the evidence supports them. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975). An award based on conflicting medical testimony will not be disturbed. *See Smiles v. Indus. Comm'n*, 2 Ariz. App. 167, 168 (1965).

¶14 As reflected in the record, the administrative law judge accepted Dr. Campbell's opinion but found that Monge experienced worsening symptoms related to the work injury after the October 2018 IME, such that the TFC surgery was necessary under the parameters set out in Dr. Campbell's testimony. Accordingly, the administrative law judge concluded that Monge's injury was not stationary during the months preceding the surgery. In a light most favorable to upholding the award, we find that view to be a reasonable theory of the evidence.

¶15 Although Dr. Campbell testified that the existence of "significant symptoms" warranted surgery, he did not elaborate on what "significant symptoms" meant and did not specifically testify that Dr. Nguyen's records showed no significant symptoms were present following his IME. In January 2019, Dr. Nguyen noted that surgery was considered and adopted as a treatment plan because Monge was experiencing symptoms in her wrist at that time. He further noted that she had received an injection that had improved the symptoms but had not eradicated them. This evidence supports his determination that surgery was necessary to alleviate Monge's pain. Dr. Nguyen stated in his operative notes that the TFC tear had been symptomatic before surgery. Again, when viewed in a light most favorable to upholding the award, and applying Dr. Campbell's criterion set out in his testimony, this is evidence that Monge had ongoing symptoms of the work-related injury for which surgery was necessary to correct.

¶16 Respondents argue that there is no testimony to establish that the industrial injury necessitated the surgery. We disagree. Dr. Campbell testified if Monge were "significantly symptomatic" from the industrial injury tear, surgery would be indicated. There was no dispute that the wrist TFC tear was an industrial injury. When asked whether he reviewed Dr. Nguyen's records, Dr. Campbell acknowledged that he had, but he was

only asked if Monge was stationary when he saw her in October 2018, almost 18 months prior to his testimony. In other words, he was not asked to evaluate Dr. Nguyen's records specifically for significant symptoms before the surgery. He did not describe what "worsened symptoms" looked like, nor did he state an opinion regarding whether the records of the treating physician demonstrated significant symptoms before the surgery. He merely said that Dr. Nguyen's records did not change his IME conclusions. Therefore, it was not unreasonable for the administrative law judge to find that Monge's symptoms persisted or re-emerged after October 2018, becoming worse up to the time of surgery.

**CONCLUSION**

**¶17**        There being a reasonable theory of the evidence that supports the administrative law judge's findings, we affirm the award.



AMY M. WOOD • Clerk of the Court
FILED:    AA