Edna **THIBODEAU**

v.

**ETSCOVITZ CHEVROLET and/or Travelers Insurance Company.**

Supreme Judicial Court of Maine.

Nov. 15, 1976.

Robert L. Jalbert, Fort Kent, for plaintiff.

Stevens, Engels & Bishop by Albert M. Stevens, Presque Isle, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

39 M.R.S.A. § 65 [1] was invoked by this employer-appellant to effect a forfeiture of an injured employee's compensation under the Workmen's Compensation Act. 39 M.R.S.A. § 1 *et seq.*

After a decision by the Industrial Accident Commissioner adverse to the employer, an appeal was taken to the Superior Court. This appeal is before us from a pro forma decree of the Superior Court sustaining the decision of the Commissioner.

We deny the appeal.

That appellee-employee received a compensable injury while in appellant's employment is not in question. The injury involved a torn cartilage with a subluxing patella, a tear of the lateral meniscus, and laxity of the ligament.

John McGinn, M.D., a board-certified orthopedic surgeon, testified before the commission that he recommended removal of the lateral cartilage and that a Hauser procedure be carried out on the patella. Such surgery, in his opinion, should not be considered difficult, and the probability of a usable knee resulting from such surgery is great. Dr. McGinn acknowledged that

---

* WEATHERBEE, J., sat at argument and participated in consultation but died prior to preparation of opinion.

1. 39 M.R.S.A. § 65 provides in pertinent part as follows:

"If any employee refuses or neglects to submit himself to any reasonable examination provided for in this Act, or in any way obstructs any such examination, or if he declines a service which the employer is required to provide under this Act, then, upon petition of said employer and hearing before the commission, such employee's rights to compensation shall be forfeited during the period of said infractions if the commission finds that there is adequate cause to do so."

any surgery involves some risk, including the risks considered usual to the use of anesthesia. Dr. McGinn's testimony, which was accepted by the commission, was that the proposed surgery "carries a very high degree of success, very few recurrences once this is done" and "it [the surgery] would prevent the kneecap from dislocating and subluxing, and by doing that number one it would prevent further damage to the patella femoral articulation; and two, it would give her a more stable knee that would not be giving out on her all the time." The surgery, he testified, would increase the employee's work capacity.

The problem arises because by history the employee had experienced phlebitis in the past and had once suffered a pulmonary embolism stemming from such phlebitis. The Commissioner found that a Dr. Aungst, who had treated the appellee prior to her accident, had "noted very marked varicose veins, especially on the left, but did not observe phlebitis which is related to varicose veins." Mrs. Thibodeau, the appellee, had declined the proposed surgery because, in her words, "I was scared." She explained her fear by saying that even after she had been told by Dr. McGinn that "he didn't think it would be dangerous to take the operation," her concern was that "if I take a chance on my life or being crippled, I'm thinking of my kids at home right now. If my kids would be older, it would be different, maybe I would take the chance; but they are too young to take care of themselves and I wouldn't want to leave them with strangers to take care of them."

The Commissioner concluded from all the evidence before him that "weighing the potential benefits to Mrs. Thibodeau [from the surgery] against the risk involved . . . it is our feeling that the risk is one of such magnitude that imposition of forfeiture is not warranted under the circumstances."

In *Gordon v. Maine Reduction Company, Inc.*, Me., 358 A.2d 544 (1976), we said, in speaking of that portion of 39 M.R.S.A. § 65 with which we are here concerned:

"[W]here the risk of surgery is insubstantial and the probability of its success high, the claimant's refusal to submit to the operation is unreasonable and will result in a forfeiture of compensation benefits.

". . . This standard requires the Commission to make its decision as to the reasonableness of the claimant's conduct by weighing the probability of the success of the proposed treatment against the risks to the claimant, thus providing an objective limitation on the Commission's authority to deny compensation once the claimant's right to benefits under the Act has already been established. Such a calculus of risk and success would embrace a multitude of variables, including the claimant's age and condition." *Id.*, at 548.

■ The correct standard involves only medical considerations, i. e., risk of treatment versus the probability of success of treatment.

It is urged that the Commissioner applied an incorrect standard. Apparently, this contention is bottomed on Mrs. Thibodeau's testimony that she was "thinking of my [her] kids at home . . .." It might be argued that the Commissioner's ruling was that the sanction provided by 39 M.R.S.A. § 65 should not be applied because of the employee's family situation. We think a fair reading of her testimony compels the conclusion that the employee was merely explaining the underlying cause of her fear of subjecting herself to the medical risk of the proposed surgery.

We are satisfied that the Commissioner so interpreted it.

He did not use this testimony as a basis for concluding that her refusal of surgery was reasonable.

39 M.R.S.A. § 65 mandates that the Commissioner weigh the probability of the success of the proposed treatment against the medical risk to the claimant. To do this, he must "embrace a multitude of variables, including the claimant's age and condition," in evaluating the medical risk. In this case specifically he properly considered that the claimant was 50 years of age, suffering from varicose veins, with a history of phlebitis and an incident of pulmonary embolus in her past.[2]

We do not interpret the Commissioner's conclusion to be based on any but medical facts. The Commissioner's conclusion clearly was that the medical risk to the appellee was of a magnitude such that the imposition of forfeiture provided by the statute was not warranted.

The probability of the success of the surgery was high. The risk of the surgery was great. That these two conclusions are accurate cannot be questioned. Applying the standard set forth in *Gordon* to these facts necessarily results in the finding that the appellee-employee's refusal was not unreasonable.

Under the long-established rule in Maine, the factual findings of the Industrial Accident Commission are final if supported by competent evidence. *E. g., Jacobsky v. D'Alfonso & Sons, Inc.*, Me., 358 A.2d 511, 513 (1976); *Willette v. Statler Tissue Corp.*, Me., 331 A.2d 365, 368–69 (1975); *see* 39 M.R.S.A. § 99.

We find that the record provided such competent evidence. It follows that the Commissioner's conclusion is unassailable here.

Accordingly, the appeal from the pro forma decree of the Superior Court must be denied.

The entry is:

Appeal denied.

It is further ordered that appellant pay to appellee $550 for her counsel fees plus her actual reasonable out-of-pocket expenses of this appeal.

DELAHANTY, J., did not sit.

All Justices concurring.

---

2. To the extent that the fact that this claimant bore eleven children is of *medical significance*, the Commissioner was entitled to consider it, but for no other reason.