TERRY L. DOUGLASS v. GRESEN MANUFACTURING COMPANY AND ANOTHER.

217 N. W. 2d 846.

May 3, 1974—No. 44194.

*Richard C. Smith,* for relator.

*Robb, Van Eps & Gilmore* and *George R. Benton,* for respondents.

PER CURIAM.

Certiorari to review a decision of the Workmen's Compensation Commission denying further benefits for temporary total disability to relator-employee.

The employee was employed as a set-up man in the employer's machine shop. In March and April of 1970 he was splashed with a caustic soda and thereafter, as a result, became sensitive to oil, grease, and other substances used in a machine shop, causing him to be afflicted with a contact dermatitis condition. Continuation of his work in contact with or near the irritants caused a flare-up of his dermatitis. His employer was unable to provide him with work where he was not exposed to such irritants. The employee's dermatologist advised the employee on December 4, 1970, that he could work at occupations other than those exposing him to the irritants that caused an eruption of the dermatitis.

Upon employee's application for retraining and the employer's consent thereto, in July 1971 employee was certified for retraining benefits under the act. At the same time he was ordered removed from employment in any industry which necessarily exposed him to irritants which would aggravate the dermatitis.

In November 1971, when his petition was heard by a compensation judge, employee was receiving retraining benefits and working part time as a delivery man. The compensation judge found employee temporarily totally disabled from August 25, 1970, to November 3, 1971. On appeal, the commission relied primarily on the prior decision of Sylvester v. All Star Bowling, 22 Minn. W. C. D. 154 (1962), and denied employee further com-

pensation beyond December 4, 1970, other than compensation under the retraining award.

Although raising other matters on the appeal,[1] employee challenged the interpretation and application of the occupational disease statute, Minn. St. 176.66, subds. 1 and 2.

In Sylvester the commission had considered a similar problem. There, employee developed a dermatitis condition while employed as a bartender. Although he had essentially recovered from the disease, his doctors advised that he was unable to return to work as a bartender due to the hazard of a flare-up of the skin condition. The commission determined that § 176.66, subd. 1, must be construed with § 176.66, subd. 2, and that if the employee is able to work at occupations other than the one in which the occupational disease was acquired, he is not temporarily totally disabled.

Similarly here, employee's dermatologist testified that on December 4, 1970, employee's dermatitis had essentially cleared up but that he should not work in a place where he would be exposed to the irritants to which he was allergic. A necessary implication from the medical testimony, then, is that he was able to engage in occupations which would not present the danger of exposure. Whether he is entitled to any further disability benefits depends therefore upon the interpretation of § 176.66, subds. 1 and 2. Employee-relator contends that temporary total disability depends upon an employee's ability to find and hold a job, not his physical condition. He would treat an occupational disease as any other industrial injury. This would disregard the provisions of § 176.66, subd. 2, that permit an employee to receive a portion of the difference between the daily wage received at the time of disablement and the daily wage he is able to earn in his partially disabled condition. Consideration must also be given to § 176.662,

---

[1] Employee claims that removing him from hazardous employment violated his constitutional rights. That order was issued in July 1971 and no appeal was taken. The denial of allowance of a penalty claimed by employee was in accordance with Minn. St. 176.225, subd. 1.

which permits the commission under given conditions, as was done here, to remove an employee with an occupational disease from hazardous employment.

The commission properly interpreted and applied the occupational disease statute to the instant situation. It was undisputed that by December 4, 1970, the dermatitis had sufficiently cleared to allow employee to return to other employment. It is therefore a logical conclusion that a correct interpretation of the statute must support the commission's finding that his temporary total disability ended on December 4, 1970. To hold otherwise, when he is able to return to any employment other than that which would reactivate the disability, would leave us with no standard at all for the termination of temporary total disability benefits. The standard we must employ, however, tends to create the possibility of a "gap" in compensation that the legislature should consider and, in its wisdom, enact proper legislation to remedy. It is apparent that such legislation may be warranted in situations like that presented here, where termination date of employee's disability rests upon an expressed medical opinion and employee diligently participates in a retraining program. In such a case, it may be considered valid that these efforts on the part of the employee should not precipitate the existence of this "gap," leaving him uncompensated for a limited period of time.

If, upon completion of the retraining program, employee is still unable to earn his pre-disability wages, it appears that an additional claim for compensation may be necessary. However, inasmuch as employee was merely participating in the retraining program and performing part-time employment at the time of the hearing, the possibility that this additional claim may have ripened is not before us and need not be considered.

Affirmed.