**BROWN SHOE COMPANY, Appellant,**

v.

**Robbie Inez PIPES, Appellee.**

Supreme Court of Tennessee.

May 8, 1979.

W. W. Lackey, Lackey & Lackey, Savannah, for appellant.

T. Robert Hill, Hill & Sanders, Jackson, for appellee.

## OPINION

COOPER, Justice.

Brown Shoe Company has appealed from the decree of the Chancery Court of Hardin County awarding appellee, Robbie Inez Pipes, temporary total and permanent partial disability benefits under the workmen's compensation act. Appellant insists there is no evidence to support the chancellor's finding of permanent disability or the causal relationship of any disability to the industrial accident. Appellant also questions the award of temporary total disability benefits.

Mrs. Pipes was employed by appellant as a "cover stitcher." On April 22, 1976, while performing the duties assigned her by appellant, Mrs. Pipes slipped and fell. After the fall, Mrs. Pipes had pain in the low back area and in her left leg. Mrs. Pipes' family doctor admitted her to the hospital in Savannah where she was placed in traction for a period of approximately two weeks. The low back pain persisted and Mrs. Pipes was referred to Dr. Joseph P. Rowland, a neurosurgeon, for examination and treatment. Dr. Rowland hospitalized appellee from June 29th to July 8, 1976, and saw her at regular intervals thereafter until September 28, 1976, when he recommended that Mrs. Pipes undergo a myelogram to localize her "problem." Mrs. Pipes refused the test at that time, but did have the test in May, 1977. The myelogram disclosed one and possibly two ruptured intervertebral discs. Mrs. Pipes refused to undergo surgery to correct the disc problem.

Dr. Rowland testified that without surgery, Mrs. Pipes would continue to have back pain. He was unwilling, however, to give her a disability rating absent some evidence of neurological involvement. Dr. Robert Barnett, an examining physician, expressed the opinion that Mrs. Pipes had a permanent anatomical disability of thirty-five percent to the body as a whole.

Except in the most obvious of cases, medical causation and the permanency of any injury must be established by expert medical testimony. *Floyd v. Tennessee Dickel Company*, 225 Tenn. 65, 463 S.W.2d 684 (1971). But once they are established the chancellor is not required to accept the doctors' opinions of the extent of the workman's disability, but is entitled to determine the extent of disability from all the evidence, both expert and nonexpert. *A. C. Lawrence Leather Company v. Loveday*, 224 Tenn. 317, 455 S.W.2d 141 (1971). In doing so, the chancellor considers many pertinent factors, including job skills, education, training, duration of disability, and job opportunities for the disabled, in addition to the anatomical disability testified to by medical experts. *See Federated Mutual Implement & Hardware Ins. Co. v. Cameron*, 220 Tenn. 636, 422 S.W.2d 427 (1967).

Medical causation and permanency of injury were established by medical testimony in this case. A fair reading of Dr. Rowland's testimony establishes that Mrs. Pipes has at least one ruptured intervertebral disc and that it resulted from her fall on April 22, 1976. Dr. Rowland also testified that Mrs. Pipes' physical condition will not improve unless and until she has back surgery. Dr. Barnett was willing to and did rate Mrs. Pipes' anatomical disability from the back injury. Both doctors testified that Mrs. Pipes' injury would limit her in lifting, bending, stooping, and twisting, all activities and movements required of a person performing manual tasks. There is also evidence that Mrs. Pipes has had little education and that her training and work experience are limited to manual labor.

On considering the medical evidence and other factors having a bearing on the issue of disability the chancellor concluded that appellee had a permanent partial disability of sixty-five percent to the body as a whole. In our opinion this finding is supported by material evidence.

■ The chancellor also awarded Mrs. Pipes temporary total disability benefits from the date of her injury to May 27, 1977, "which is the date the results of the myelogram were obtained and surgery was refused by Mrs. Pipes." Appellant insists the temporary total disability benefits should terminate on September 28, 1976.

*Redmond v. McMinn County*, 209 Tenn. 463, 354 S.W.2d 435 (1962), contains an extensive analysis of temporary total disability. After noting that our statutes classify compensable disabilities into four distinct classes, temporary total disability, temporary partial disability, permanent partial disability, and permanent total disability, this court said:

Under statutes like ours, "temporary total disability" refers to the injured employee's condition while disabled to work by his injury and until he recovers as far as the nature of his injury permits; and it is separate and distinct from any of the other four kinds of disability.

Temporary total disability benefits then are terminated either by the ability of the employee to return to work or the attainment of maximum recovery from his injury. *Simpson v. Satterfield*, Tenn., 564 S.W.2d 953 (1978); *Gluck Bros. Inc. v. Coffey*, 222 Tenn. 6, 431 S.W.2d 756 (1968).

Mrs. Pipes had attained maximum recovery from her injury by September 28, 1976, and her disability thereafter was less than total. According to Dr. Rowland, her physical condition has not changed since September, 1976, and will not change unless and until she undergoes back surgery. While it is true that Dr. Rowland's diagnosis of disc involvement was not definitely confirmed and definitely located until the myelogram was performed in May, 1977, the myelogram had no effect on appellee's physical condition. It was merely a diagnostic aide, not a form of treatment.

Under the evidence in this case and the rule announced in the above cases whereby the temporary total disability period is cut off when the workman has reached his maximum recovery, at which point either permanent total or permanent partial disability commences, we must hold that the chancellor erred in awarding temporary total disability benefits through May 27, 1977. The cut-off date for these benefits should have been September 28, 1976.

■ Appellant also questions the chancellor's action in admitting in evidence the testimony of a vocational examiner as to the results of tests he conducted with appellee and his conclusions from the tests. The tests were designed to determine the mental acuity and physical dexterity of appellee, with a view of placing her in the job market. We see no error in the admission of the testimony. It is relevant to the issue of industrial disability and is an additional way to bring home to the trier of fact the impact of the injury on the earning capacity of the appellee.

■ By motion appellee has asked this court to assess damages against appellant on the ground the appeal was frivolous and was taken solely for the purpose of delay and harassment of appellee, T.C.A. § 27–124. We see no merit in the motion. The controversy over the award of temporary total disability benefits, in our opinion, justified the appeal.

The decree of the chancellor is modified so as to award Mrs. Pipes temporary total disability benefits from the date of her injury to September 28, 1976, and for the three days she was hospitalized for the myelogram examination. In all other respects, the decree is affirmed.

The costs of the appeal are taxed against Brown Shoe Company.

HENRY, C. J., and FONES, BROCK and HARBISON, JJ., concur.