Edwin BIGNELL, Appellant,

v.

**WISE MECHANICAL CONTRACTORS
and Industrial Indemnity, Appellees.**

No. 5929.

Supreme Court of Alaska.

Sept. 24, 1982.

Lance C. Parrish, Parrish Law Office, Fairbanks, for appellant.

Sanford Gibbs and Liam J. Moran, Hagans, Brown & Gibbs, Anchorage, for appellees.

Gordon J. Tans, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for amicus curiae Sea-Land Services, Inc. and Travelers Ins. Co.

Before BURKE, C. J., and RABINOW-ITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

The main issue in this case is whether an injured worker should be considered temporarily disabled under the Workers' Compensation Act only until his medical condition stabilizes, or whether an employee may continue to receive temporary disability benefits while participating in an approved vocational rehabilitation program. This case also raises a question concerning the award of attorney's fees in workers' compensation cases.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Edwin Bignell, a construction worker, suffered a back injury in the course of his employment with Wise Mechanical Contractors (Wise) on March 9, 1978. Wise's insurance carrier, Industrial Indemnity (Industrial), did not contest Bignell's workers' compensation claim and paid him temporary total disability benefits. On December 4, 1978, Dr. Earle Crandall examined Bignell and concluded that his medical condition had become permanent and stable with some back pain. On June 15, 1979, Dr. Paul Dittrich examined Bignell and estimated that he had ten percent permanent partial impairment because of his ·back injury. Thereupon, Industrial terminated Bignell's temporary total disability benefits and paid him $6,000.00 as a lump sum for ten percent permanent partial disability.

After examining Bignell on September 24, 1979, Dr. Glen Sizemore concluded Bignell would benefit from retraining in a field where he would use his back less. Dr. George Brown, who examined Bignell three times between December 21, 1979, and Jan-

uary 29, 1980, concluded that Bignell could not return to his old job.

Bignell applied for vocational rehabilitation services on October 8, 1979. The Division of Vocational Rehabilitation conducts a vocational assessment of each applicant for rehabilitation to determine: (1) Is the person disabled? (2) Is the disability a substantial handicap to employment? (3) Is it feasible for the person to return to employment with the services of vocational rehabilitation?[1] At a January 29, 1980 Workers' Compensation Board hearing, Roger Kempfer, a counselor at the Division of Vocational Rehabilitation, testified that as of that moment, he had not completed the vocational assessment of Bignell. Kempfer had determined that Bignell had a disability which was a substantial handicap to employment. However, Kempfer had to do additional testing to assess how feasible it was for Bignell to return to competitive employment.

Bignell filed an application with the Workers' Compensation Board against Wise and Industrial, (hereafter collectively referred to as Wise), claiming it was error to terminate his temporary total disability benefits in July 1979 and award ten percent permanent partial disability compensation. The Board on March 6, 1980 ruled in Bignell's favor,[2] holding that an applicant is entitled to receive temporary total disability benefits while undertaking an approved vocational rehabilitation program. The relevant portion of the Board decision provides:

Although Mr. Bignell was rated in July 1979, by Dr. Dittrich, the doctor did not indicate whether the back injury prevented the applicant's return to his previous employment. Dr. Crandall had indicated in his December 4, 1978 report that retraining might not be necessary but it was too early for a decision. In his Sep-

---

1. AS 23.15.210(4) defines "handicapped individual" as "an individual having a physical or mental disability which for that individual constitutes or results in a substantial handicap to employment and who can reasonably be expected to benefit in terms of employability

from the provision of vocational rehabilitation services."

2. *Bignell v. Wise Mechanical Contractors,* Case No. 78–03–0025 (Alaska Workmen's [sic] Compensation Board, March 6, 1980).

tember 24, 1979, report Dr. Sizemore stated that retraining was necessary. According to Roger Kempfer, the counselor from the Vocational Rehabilitation Office for the State of Alaska, Mr. Bignell first applied for vocational rehabilitation assistance on October 8, 1979.

From the record we conclude that the applicant has acted reasonably in connection with his retraining efforts. Mr. Bignell did not definitely know of his need for retraining due to his injury until he consulted Dr. Sizemore. He consulted Dr. Sizemore of the Mayo Clinic at his own expense to see if something could be done about his back so he could return to construction work. When he realized that he could not return to his former occupation, he contacted the Office of Vocational Rehabilitation. He has done his best to minimize his damages. He has cooperated with every request of the rehabilitation counselor.

. . . .

Under these circumstances, temporary benefits should have continued despite the medical rating of the impairment by Dr. Dittrick. Future temporary total disability benefits are to be paid so long as the applicant continues to do his utmost to minimize his damages by proper medical treatment and completion of a vocational rehabilitation evaluation.

Based on both Dr. Sizemore's report and the testimony of Dr. Brown, the applicant cannot return to his former occupation. A vocational assessment is necessary. If retraining is necessary and a formal retraining program is devised, the defendant shall pay temporary total disability benefits during retraining as long as the applicant cooperates and maintains passing grades in his course work.

The Board further held that Wise could offset the $6,000.00 permanent partial disability payment paid to Bignell in July 1979 against any additional temporary disability benefits. The Board awarded Bignell an attorney's fee of twenty-five percent of the first $1,000.00 of compensation and ten percent thereafter. The attorney's fee was to be computed on compensation after the $6,000.00 was offset.

Wise appealed the Workers' Compensation Board award to the superior court. Wise did not object to the findings regarding Bignell's inability to return to construction work, his reasonable action in connection with his retraining efforts and his best efforts to minimize his damage. Bignell cross-appealed the denial of attorney's fees on the $6,000.00 offset. The superior court reversed the workers' compensation award, holding that temporary total disability benefits cease once the employee's condition becomes medically stable. At that point the employee should receive permanent disability compensation if he still has loss in earning capacity. The superior court did not reach the attorney's fee issue.

Bignell appealed the superior court's decision to this court. For the reasons given below, we reverse.[3]

## II. THE DURATION OF TEMPORARY DISABILITY

The principal issue presented on appeal is whether the Board properly determined that temporary disability benefits would be available during that period that Bignell participated in an approved vocational rehabilitation program.[4]

The Workers' Compensation Act (Act), AS 23.30.005–.270, governs the award of benefits to workers who in the course of their employment suffer injury resulting in disability.[5] The Act does not explicitly ad-

---

**3.** Sea-Land Services, Inc. and Travelers Insurance Company (Sea-Land) were permitted to appear as Amicus Curiae after oral argument.

**4.** Since this dispute requires construction of the workers' compensation statute, "we shall independently consider the meaning of the statute." *Wien Air Alaska v. Arant,* 592 P.2d 352, 356 (Alaska 1979), *quoting Hood v. State, Work-*

*men's Compensation Bd.,* 574 P.2d 811, 813 (Alaska 1978).

**5.** We have previously noted that in accordance with the humanitarian purposes of the Act, the Act should be liberally construed in favor of the employees. *See Fluor Alaska, Inc. v. Mendoza,* 616 P.2d 25, 28 (Alaska 1980); *Hood v. State, Workmen's Compensation Bd.,* 574 P.2d 811,

dress whether temporary disability benefits may be provided to an injured employee during the course of vocational rehabilitation. In contrast, where an applicant is determined to suffer either a permanent total or a permanent partial disability, two related statutory provisions govern the award of supplemental maintenance benefits. AS 23.30.191 [6] provides that an applicant not entitled to further temporary disability benefits who participates in an approved vocational rehabilitation program may be awarded up to thirty-three and one-third percent of his weekly wage as supplemental maintenance benefits. AS 23.30.040(e) provides that the Board may award up to an additional $200.00 per month from the second injury fund for maintenance during the period of retraining and rehabilitation.

■ The dispositive question in the present case is when should Bignell's disability be considered permanent, rather than temporary. Wise and Sea-Land submit that after Bignell's medical condition stabilized, Bignell was not entitled to temporary disability benefits. Instead, once further medical attention was not necessary, Bignell's permanent disability should have been rated.[7] As a consequence, any entitlement to supplemental benefits for maintenance during the course of vocational rehabilitation would derive from AS 23.30.191 and AS 23.30.040(e). Rejecting the

focus on medical stabilization, Bignell argues that since permanent disability benefits are a function of impaired earning capacity, the statutory scheme does not contemplate that the Board set a permanent disability rating until vocational rehabilitation is completed. Bignell thus argues that he is entitled to continue to receive temporary disability benefits during the course of vocational rehabilitation training.

■ The Act establishes four categories of disability—permanent total disability, temporary total disability, permanent partial disability, and temporary partial disability.[8] No category is separately defined. The categories merely reflect the character (total or partial) and quality (permanent or temporary) of the disability. However, "disability" is specifically defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." AS 23.30.265(10). Thus by definition, "disability" is a function of an injured employee's capacity to earn wages.

The Act also establishes benefits available for each type of disability.[9] The distinction drawn between "scheduled" and "unscheduled" disabilities in the award of permanent partial disability benefits is relevant. For certain disabilities, such as the loss of vision, digits or body members, the Act sets a specific dollar award. AS 23.30.-

---

813 (Alaska 1978); *S.L.W. v. Alaska Workmen's Compensation Bd.*, 490 P.2d 42, 43 (Alaska 1971).

**6.** AS 23.30.191 provides:

An employee, who, as a result of injury, is or may be expected to be totally or partially incapacitated for his normal occupation and who, under the direction of the department, is being rehabilitated to engage in a remunerative occupation and who is not entitled to further temporary total disability or temporary partial disability compensation, in addition to the amounts allowed under AS 23.30.-040 for maintenance, may receive additional compensation necessary for his rehabilitation, not more than one-half of the compensation allowed under AS 23.30.185.

**7.** Based upon Dr. Dittrick's estimate that Bignell suffered a ten percent permanent partial disability, Wise discontinued Bignell's temporary disability benefits and tendered $6,000.00

as a final disability award. Though Dr. Dittrick's estimate may well be considered by the Board, his estimate is hardly determinative of the impairment in Bignell's earning capacity. It is the responsibility of the Workers' Compensation Board to consider a wide array of information regarding an applicant's earning capacity, and then to determine an appropriate permanent disability rating.

**8.** AS 23.30.180, .185, .190 and .200. *See Hood v. State, Workmen's Compensation Bd.*, 574 P.2d 811, 814 (Alaska 1978); *London v. Fairbanks Mun. Utils., Employer Group,* 473 P.2d 639, 642 (Alaska 1970). As we stated in *London,* "[c]ompensation for each category of disability reflects a unique set of policy considerations." 473 P.2d at 642.

**9.** AS 23.30.180–.200.

190(1)–(19). Here, loss of earning capacity is presumed.[10] A permanent partial disability award for a disability not subject to a scheduled award is governed by AS 23.30.-190(20). That provision provides that "in all other cases in this class of disability [permanent partial disability] the compensation is 66⅔ per cent of the difference between his average weekly wages and his. *wage earning capacity* after the injury in the *same employment or otherwise* ...." (Emphasis added.)

*Hewing v. Alaska Workmen's Compensation Board* firmly established that compensation for an unscheduled disability is a function of economic loss. We stated:

Serious conceptual differences exist between the "whole man" and "earning capacity" theories of disability. Under the whole man theory, the primary criteria governing disability awards are physiological and psychiatric. This theory challenges the concept, basic to Alaska's Workmen's Compensation law that *unscheduled partial disability awards should be made for economic loss, not for physical injury as such.*

512 P.2d 896, 900 (Alaska 1973) (Hewing I) (emphasis added) (footnotes omitted).

■ We reiterated this principle in *Vetter v. Alaska Workman's Compensation Board,* where we stated that "[t]he concept of disability compensation rests on the premise that *the primary consideration is not medical impairment as such, but rather loss of earning capacity* related to that impairment." 524 P.2d 264 (Alaska 1974) (emphasis added). Wage earning capacity, the focal point of the *Hewing I/Vetter* inquiry, may be determined by reference to actual wages, or to the nature of the injury, de-

gree of physical impairment, usual employment and any other factors or circumstances which may affect capacity to earn wages in a disabled condition. AS 23.30.210. "Other factors" have been held to include age, education, industrial history, trainability and availability of suitable work in the community. *Hewing v. Peter Kiewit & Sons,* 586 P.2d 182, 186 (Alaska 1978) (*Hewing II*); *Vetter v. Alaska Workman's Compensation Board,* 524 P.2d at 266; *Hewing v. Alaska Workman's Compensation Board,* 512 P.2d at 899 (*Hewing I*).

■ We are guided by two considerations in concluding that the Board may award temporary total disability benefits to an employee with an unscheduled disability whose condition has stabilized medically, but who is pursuing an approved vocational rehabilitation program. First, the position advanced by Bignell is more consistent with the principles enunciated in *Hewing I* and *Vetter.* Clearly, the pursual of vocational rehabilitation may directly influence an applicant's "wage earning capacity ... in the same employment or otherwise." Vocational rehabilitation is a peculiarly appropriate "other factor" to be considered in determining the extent of an injured employee's loss of earning capacity. The Board will have a far stronger basis to ascertain the impact on an injured employee's wage earning capacity after completion of a vocational rehabilitation assessment and, in appropriate cases, a vocational rehabilitation program.

Second, we are mindful that in most cases the position advanced by Bignell, and adopted by the Board, will provide a stronger incentive for injured employees to pursue vocational rehabilitation.[11] The desirability

---

**10.** *See* 2 A. Larson, The Law of Workmen's Compensation § 57.14, at 10–27 (1978).

**11.** Professor Larson notes:

The principal decisional issues affecting rehabilitation are those that, intentionally or unintentionally, have an incentive or disincentive effect on rehabilitation. What makes this area a hard one to handle by the judicial process is that usually a rule that forms an incentive for the employee forms a disincentive for the employer, and vice versa. Moreover, if one or the other is under a disincen-

tive, it may be difficult in practice to make rehabilitation effective....

. . . .

In most of the decided cases the resolution of this dilemma has not been consciously derived from an attempt to achieve the optimum result from the point of view of rehabilitation incentives. The cases have been decided on other grounds, often having to do with conceptual approaches to the idea of compensible disability.

of vocational rehabilitation is reflected in Professor Larson's seminal observation. "The conviction is gradually gaining ground that the compensation job is not done when the immediate wound has been dressed and healed. There remains the task of restoring the man himself to the maximum usefulness that he can attain under his physical impairment." 2 A. Larson, The Law of Workmen's Compensation § 61.21, at 10–759 (1978). We note that while some courts have suggested that temporary disability benefits are not available after medical stabilization,[12] no court to our knowledge has addressed this issue in the context of the effect of such a determination on the availability of vocational rehabilitation benefits. Vocational rehabilitation is but one way by which an injured employee mitigates the damages he suffers as a result of an industrial accident. It has been recognized by both case law [13] and statute [14] that an injured employee must submit to reasonable medical treatment. There is no reason why a similar rule should not apply to mitigation through vocational rehabilitation, particularly given our statutory scheme which awards compensation for unscheduled permanent partial disabilities by reference to the impairment of earning capacity.

Wise and Sea-Land argue that allowance of temporary disability benefits during a period of rehabilitation will render AS 23.-30.191 superfluous. We disagree. To be

sure, our holding will limit the scope of section .191. But to limit the coverage of section .191 is not to abrogate its applicability. Where an employee is determined to have a permanent disability either by Board action or by settlement, section .191 will be applicable. Section .191 may well be applicable where an employee who suffers a scheduled disability seeks to participate in an approved vocational rehabilitation program. Indeed, section .191 will be applicable in certain instances where an employee pursuing vocational rehabilitation suffers an unscheduled disability. For instance, AS 23.30.200 limits temporary partial disability benefits to five years. A temporary partially disabled worker whose need for vocational rehabilitation only became apparent toward the end of the fifth year may require section .191 benefits to proceed through vocational rehabilitation.

In sum, we conclude that an employee who suffers an unscheduled disability and who undertakes an approved vocational rehabilitation program may continue to receive temporary disability benefits.[15]

## III. ATTORNEY'S FEES

AS 23.30.145(a) provides that attorney's fees in workers' compensation cases "may be allowed only on the amount of compensation controverted and awarded." The Board awarded Bignell attorney's fees

2 A. Larson, *supra* note 10, § 61.24, at 10–771 to 10–774.

12. We note, for example, the following passage from the District Court of the Territory of Alaska:

In determining compensation payments for temporary total disability, the fact that a condition can be diagnosed as partially permanent is not conclusive as to the termination of the period for which total temporary compensation must be paid to the claimant. A claimant is entitled to compensation for temporary total disability during the period of convalescence and during which time the claimant is unable to work, and the employer remains liable for total compensation until such time as the claimant is restored to the condition so far as his injury will permit. *Phillips Petroleum Co. v. Alaska Indus. Bd.,* 17 Alaska 658, 665–66 (D.Alaska 1958). *See also Bethlehem Steel Co., Shipbuilding Div. v. Tray-*

*nor,* 239 F.Supp. 749 (D.Md.1965); *Mutual Liab. Ins. Co. of Wis. v. Contreras,* 109 Ariz. 383, 509 P.2d 1030 (1973) (en banc); *Gorman v. Atlantic Gulf & Pac. Co.,* 178 Md. 71, 12 A.2d 525 (1940).

13. *Phillips Petroleum Co. v. Alaska Indus. Bd.,* 17 Alaska 658, 663 (D.Alaska 1958).

14. AS 23.30.095(d); *see Fluor Alaska, Inc. v. Mendoza,* 616 P.2d 25 (Alaska 1980).

15. We note that even if an applicant is an appropriate candidate for vocational rehabilitation, he may still be gainfully employed and thus entitled to only temporary partial disability benefits. In the present case, the Board prematurely established that participation in a vocational rehabilitation program would necessarily render Bignell temporarily *totally* disabled.

on all compensation in excess of $6,000.00, the amount tendered by Wise as a permanent partial disability award. Bignell submits that since Wise disputed the disability classification, the $6,000 voluntarily tendered by Wise was "in controversy." There is no merit to Bignell's position. The statute unambiguously restricts the award of attorney's fees to *amounts* which are controverted. *See Wien Air Alaska v. Arant,* 592 P.2d 352, 364 (Alaska 1979); *Haile v. Pan American World Airways, Inc.,* 505 P.2d 838, 840 (Alaska 1973); *J. B. Warrack Co. v. Roan,* 418 P.2d 986, 989–90 (Alaska 1966). Notwithstanding the dispute regarding the disability classification, the $6,000.00 tendered by Wise was not controverted. Accordingly, we conclude that the Board calculated the award of attorney's fees in a proper fashion.

REVERSED and REMANDED for further proceedings consistent with this opinion.[16]

RABINOWITZ, J., with whom MATTHEWS, J., joins, dissenting.

RABINOWITZ, Justice, with whom MATTHEWS, Justice joins, dissenting.

I would affirm the superior court's reversal of the Board's award of workers' compensation in this case. In my view, the superior court's ruling that temporary total disability benefits cease once the employee's condition becomes medically stable is more consonant with Alaska's workers' compensation statutes than is the majority's construction.

The majority's major legal premise is that temporary total benefits are available after the medical condition of the injured employee has stablized. Case law from other jurisdictions overwhelmingly reflects the view that medical stabilization, or maximum physical recovery, marks the end of temporary disability.[1] The Alaska legislature has enacted provisions for temporary total disability benefits,[2] for permanent partial disability benefits,[3] and for compensation during vocational rehabilitation.[4] For the court to now hold that temporary benefits should extend through rehabilita-

---

**16.** In light of our determination that prior to development of a vocational rehabilitation program it is impossible to determine whether an applicant should receive total or partial temporary disability benefits, *see supra* note 15, the matter must be remanded to the Board with instructions to amend the order in an appropriate fashion.

**1.** *See, e.g., Speigner v. McGhee,* 55 Ala.App. 384, 316 So.2d 215, *cert. denied,* 294 Ala. 769, 316 So.2d 221 (1975); *Home Ins. Co. v. Industrial Comm'n,* 23 Ariz.App. 90, 530 P.2d 1123 (1975); *Kirkland v. Benedict & Jordan,* 120 So.2d 169 (Fla.1960); *Morrison Merchandising Corp. v. Rambeau,* 377 So.2d 234 (Fla.Ct.App. 1979), *cert. denied,* 386 So.2d 640 (Fla.1980); *Crabtree v. Beech Aircraft Co.,* 229 Kan. 440, 625 P.2d 453 (1981); *Azwell v. Franklin Assocs.,* 374 So.2d 766 (Miss.1979); *Anderson v. Carlsons Transport,* 178 Mont. 290, 583 P.2d 440 (1978); *Johnson v. State Accident Ins. Fund,* 18 Or.App. 152, 524 P.2d 559 (1974) (by statute); *Burns v. Joyner,* 264 S.C. 207, 213 S.E.2d 734 (1975); *Brown Shoe Co. v. Pipes,* 581 S.W.2d 140 (Tenn.1979).

Larson acknowledges that the end of the "healing period" and consequent "stabilization" of one's physical condition "determines in most states when temporary benefits cease and when the extent of permanent disability can be appraised, for purposes of making either a per-

manent partial or a permanent total award." 2 A. Larson, The Law of Workmen's Compensation § 57.12, at 10–9 (1981) (footnote omitted). He proposes the following test for distinguishing between a "temporary" and a "permanent" disability:

> Once the physical condition is stabilized, the question becomes: is the inability to get work the result of the injury? If it is, the straightforward approach would then be to find the claimant permanently disabled by his residual impairment. If later the claimant gets steady employment, the case can be reopened. In the meantime, the claimant is definitely disabled in the compensation sense, because his physical impairment causes his unemployment; *but at the same time the disability cannot accurately be characterized as temporary, since it has become stable and what remains is permanent.* By the process of elimination, one comes to a total permanent award, subject of course to reopening.

*Id.* at 10–20 (footnotes omitted) (emphasis supplied).

**2.** AS 23.30.185.

**3.** AS 23.30.190.

**4.** AS 23.30.040(e), AS 23.30.191.

tion is to judicially fill a gap which there is no indication the legislature intended to fill.[5]

Further, in my view, the majority's conclusion that the Board may award temporary total disability benefits to an employee with an unscheduled disability whose condition has stabilized medically, but who is pursuing an approved vocational rehabilitation program, effectively writes out a portion of AS 23.30.191. This statute provides for supplemental payments during rehabilitation if an employee is no longer entitled to temporary total benefits.[6] If, as a matter of law, an employee who is participating in a vocational rehabilitation program is still temporarily disabled, there is no need for a statutory provision entitling the employee to maintenance payments on the ground that he is no longer eligible for temporary disability benefits. In short, I think AS 23.30.191 contemplates that an injured worker's condition may be permanent for the purpose of payment of benefits while the worker is participating in a vocational rehabilitation program.

---

**5.** *See Douglass v. Gresen Mfg. Co.,* 300 Minn. 82, 217 N.W.2d 846, 847 (1974) (per curiam).

**6.** AS 23.30.191 provides in pertinent part that [a]n employee, who, as a result of injury, . . . is being rehabilitated . . . and who is not entitled to further temporary total disability or temporary partial disability compensation . . . may receive additional compensation necessary for his rehabilitation . . . .