**HOUSTON CONTRACTING, INC., (Employer) and Aetna Casualty and Surety Company (Insurer), Appellants,**

v.

**Richard L. PHILLIPS, Appellee.**

No. S–3522.

Supreme Court of Alaska.

May 31, 1991.

Patricia L. Zobel and Deirdre D. Ford, Staley, DeLisio, Cook & Sherry, Inc., Anchorage, for appellants.

Michael J. Schneider, Mestas & Schneider, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Houston Contracting, Inc.'s appeal is the most recent of a long succession of legal and administrative actions pertaining to the amount of workers' compensation benefits to which Richard L. Phillips, a heavy duty mechanic who was injured while working for Houston, is entitled. The issues in this case fall into two categories: those requiring interpretation of benefit computation statutes; and those pertaining to the authority of the Alaska Workers' Compensation Board to condition workers' compensation benefits upon the beneficiary's cooperation with rehabilitation orders.

### I. Factual and Procedural Background

On August 13, 1976, while working on the trans-Alaska pipeline as a union certified heavy duty mechanic for Houston Contracting, Inc. (Houston), Richard L. Phillips fell, injuring his back. Following the accident, Phillips underwent three spinal fusions between 1976 and 1979. The last fusion involved the use of a graft. The removal of a segment of his left fibula for the graft lead to problems with his left ankle for which additional surgery was required in June 1980. Phillips also attended two pain clinics and visited three occupational counselors. Houston's insurance carrier initially "accepted responsibility for the injury." Phillips' medical expenses were paid, and throughout the course of his treatment and recovery, he continually received either total or partial disability benefits.

Phillips' benefits were originally computed pursuant to AS 23.30.220(2).[1] On July 24, 1984, Phillips applied to the Alaska Workers' Compensation Board (Board) for an adjustment of his compensation rate pursuant to either AS 23.30.220(1) or (3). He also requested penalties and interest based on Houston's failure to make the adjustments. The Board denied Phillips' petition on October 24, 1984. He appealed to the superior court, and ultimately to this court. We remanded the matter to the Board for a determination of the proper subsection of AS 23.30.220 to be used in Phillips' benefit calculation. *Phillips v. Houston Contracting, Inc.*, 732 P.2d 544 (Alaska 1987).

On July 30, 1987, the Board issued its decision on remand. It recalculated Phillips' average weekly wages pursuant to AS 23.30.220(3). Interest was awarded from July 27, 1984, the earliest date on which Houston could have had knowledge of Phillips' application for adjustment of his compensation rate. His request for penalties was denied. Phillips appealed the Board's method of calculating his average wage under subsection (3), as well as its rejection

---

1.· AS 23.30.220 has been amended several times since Phillips' 1976 injury. This opinion will cite to the version in effect in 1976. Pertinent portions are quoted and former AS 23.30.220 can be found in its entirety at Ch. 75, § 1, SLA 1965.

of his claims for penalties and interest prior to 1984 to the state superior court.

The dispute pertaining to rehabilitation stems from a November 6, 1985 Board decision. At that time, the Board labelled Phillips "permanently partially disabled." However, it concluded that vocational rehabilitation was necessary to enable Phillips to capitalize on his remaining marketable skills. Houston was ordered to arrange for Phillips' rehabilitation. Noting that Phillips was currently receiving Total Temporary Disability (TTD) benefits, the Board ordered Houston to continue paying benefits at the TTD level for the duration of Phillips' rehabilitation.

Houston arranged for Phillips to be evaluated by a counselor it selected, Anthony J. Choppa; however, upon learning that Choppa worked almost exclusively for insurance companies, Phillips refused to be examined by him. On December 3, 1985, Houston petitioned the Board for permission to suspend payment of TTD benefits. In addition, it requested the Board to set off the amount of TTD benefits Houston paid during the period of Phillips' noncooperation against the Permanent Partial Disability (PPD) benefits which Houston would owe Phillips in the future.

In its Decision and Order issued on November 10, 1986, the Board agreed with Houston that Phillips had failed to cooperate with the Board's rehabilitation order. It suspended Phillips' benefits retroactively. Phillips appealed, contesting the Board's authority to retroactively suspend his benefits.

The superior court consolidated Phillips' appeals of the Board's November 10, 1986 and July 30, 1987 decisions. On July 17, 1989, the court concluded that the Board had improperly construed AS 23.30.220(3). In addition, it assessed penalties against Houston and ordered it to pay interest on the total amount of benefits due. The superior court also held that the Board did

not have authority to sanction an injured worker for refusing to participate in a rehabilitation evaluation. Alternatively, it found that even if the Board had authority to order rehabilitation, there was not substantial evidence of Phillips' noncooperation.

Houston appeals.

## II. Computation of Average Weekly Wage

█ In Phillips' 1984 petition, he asserted that the Board had improperly selected the subsection (2) of AS 23.30.220 for computation of his benefits and requested that his benefits be recomputed in one of the two alternative methods set forth in AS 23.30.220.[2] We addressed his argument in *Phillips v. Houston Contracting, Inc.*, 732 P.2d 544 (Alaska 1987), and remanded the case to the Board for reevaluation of the subsection applicable to Phillips.

The Board recalculated Phillips' benefits under subsection (3) of AS 23.30.220 which provided:

[I]f the board determines that the wage at the time of the injury cannot ... otherwise be ascertained without undue hardship to the employee, the wage for calculating compensation shall be the usual wage for similar service rendered by paid employees under similar circumstances, as determined by the board[.]

Because neither Phillips nor Houston had presented evidence of the "wages and circumstances" of union mechanics in Alaska, the Board based its computations on the evidence it had before it, Phillips' work and salary history. Phillips again appealed, arguing that the Board's method of performing the computations did not comply with the statutory requirement that the basis for the wage determination be the usual wage for *similar* service. The superior court reversed on the grounds asserted by Phillips. Houston maintains that the Board's computation accurately estimated

---

**2.** To assess the employee's probable future earnings, the Board determines the employee's average weekly wage at the time of his or her injury by selecting and applying one of the three computation methods set forth in AS 23.30.220. *See*

*Johnson v. RCA-OMS, Inc.,* 681 P.2d 905, 907 (Alaska 1984). Workers' compensation benefits are then based on this computation of the employee's average weekly wages.

Phillips' probable future earning capacity, and should be affirmed.

In *Brunke v. Rogers & Babler*, 714 P.2d 795, 800 n. 8 (Alaska 1986), we stated that the Board "may consider in its calculations the amount earned by other carpenters working on the same site during the period [the employee] was disabled." We recognized that the average wages earned at the time of injury may not accurately reflect the employee's future earning potential. *Id.* at 799; *see also Deuser v. State*, 697 P.2d 647 (Alaska 1985); *State Dept. of Transp. v. Gronroos*, 697 P.2d 1047 (Alaska 1985).

In light of *Brunke*, the Board expressed concern over the difficulty of determining Phillips' probable future wages. Phillips was working on the trans-Alaska pipeline at the time of his injury. His income was higher during his year on the pipeline than in any previous year. The Board speculated that the earning capacity of mechanics dropped following the pipeline's completion less than a year after Phillips was injured. In an effort to determine likely earnings of mechanics following the termination of that project the Board considered Phillips' extended work history.[3]

We are persuaded that there was evidentiary support for the Board's computations and that use of a longer wage history was appropriate given the episodic nature of work in the construction industry in Alaska. The objective of the workers' compensation system is to provide compensation to injured employees for the loss of future earnings resulting from injuries incurred on the job. The Board's method satisfied this goal. Based upon the information made available by the parties, its estimation of Phillips' average weekly wage at the time of his injury reflects his actual lost earnings as accurately as possible.[4] We therefore reverse the superior court and reinstate the Board's computation of Phillips' average weekly wage.

### III. Penalty

Former AS 23.30.155 provides for penalties against employers who dispute an employee's right to compensation, but fail to follow certain procedures for notifying the employee and the Board of the grounds upon which the right to compensation is controverted.[5]

3. During the years prior to his 1976 injury, Phillips worked fewer hours than he did while working on the pipeline. Thus, by considering a longer period of Phillips' work history, the Board reduced his average weekly wage. It explained that this reduction was necessary because there was no evidence in the record about Phillips' intentions after the termination of the pipeline project.

The Board's use of Phillips' hourly wage in its calculations is of little import. As Phillips concedes, all employees of a given classification working on the same union contracts receive the same wages.

4. In affirming the Board's decision we wish to clarify that, although the Board did not follow precisely the same method we approved in *Brunke*, that decision merely established one permissible method of computing average weekly wages under AS 23.30.220(3). It did not create a requirement that the wages of other employees in the period following the claimant's injury be incorporated into the Board's computation, particularly when such information is not provided by the parties. Computations of benefits pursuant to AS 23.30.220 are clearly within the Board's area of expertise, and in cases where there is evidence to support its determination, we must defer to the Board.

5. In August 1976, AS 23.30.155 stated in pertinent part:

(a) Compensation under this chapter shall be paid periodically, promptly and directly to the person entitled to it, without an award, except where liability to pay compensation is controverted by the employer.

\* \* \* \* \* \*

(d) If the employer controverts the right to compensation, he shall file with the board on or before the 14th day after he has knowledge of the alleged injury or death, a notice, in accordance with the form prescribed by the board, stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death, and the grounds upon which the right to compensation is controverted.

(e) If any installment of compensation payable without an award is not paid within 14 days after it becomes due ... there shall be added to the unpaid installment an amount equal to 20 percent of it, which shall be paid at the same time as, and in addition to, the installment, *unless notice is filed* under (d) of this section or unless the nonpayment is excused by the board after a showing by the employer that owing to conditions over which he had no control the installment could not

Following his application for adjustment of his benefits, Phillips asserted that Houston should be penalized under AS 23.30.-155(e) on the additional amounts awarded because it failed to pay the requested amount or to file a notice of controversion required by AS 23.30.155(d). The Board rejected this claim, but the superior court concluded that Houston was required to follow the controversion procedure. Houston appeals, asserting that it cannot be required to anticipate changes in the law.

■ While AS 23.30.155 seeks to protect workers' compensation recipients by imposing a penalty on employers who fail to timely pay compensation, it does not require employers to pay or controvert requests for increases in compensation unless the increase is "payable without an award." *Phillips v. Nabors Alaska Drilling, Inc.,* 740 P.2d 457, 460 (Alaska 1987).

■ The introductory phrase of AS 23.-30.220(3) states, "if the board determines...." Thus, a Board determination is required before benefits are payable under this subsection. The adjustment of compensation requested by Phillips was clearly not "payable without an award." We reverse the superior court's determination that Houston was required to follow the controversion procedure and hold that penalties are not applicable in this case.

## IV.  Interest

Houston also appeals the superior court's holding that interest on unpaid workers' compensation benefits accrues "at the time the claims should have been paid." It argues that the Board's determination that interest accrued only from July 1984, the date Houston received notice of Phillips' claim for increased benefits, should be reinstated.[6] We reject this assertion.

be paid within the period prescribed for the payment.
(Emphasis added).

6.  The Board determined that "compensation is 'due' for the purposes of computing interest every two weeks after the employer knows about the disability or particular benefit claimed." Therefore, although the parties

■ In *Land & Marine Rental Co. v. Rawls,* 686 P.2d 1187 (Alaska 1984), we held that a workers' compensation award "shall accrue lawful interest ... on money after it is due, from the date it should have been paid." *Id.* at 1192. Thus, interest accrued from the date additional compensation became due to Phillips. The Board determined that increased benefits were payable from January 1, 1977, and this determination has not been appealed. Since compensation became due in January 1977, under *Land & Marine Rental,* interest must also be awarded from January 1977.

Accordingly, we affirm the superior court's holding that interest accrued from January 1, 1977 and order that interest be paid at the rate prescribed by the version of AS 45.45.010 applicable at the time the interest accrued. *See Drickersen v. Drickersen,* 604 P.2d 1082, 1087 (Alaska 1979) (award of prejudgment interest was excessive when interest accruing prior to amendment of AS 45.45.010 was awarded at percentage rate applicable only after the statute was amended).

## V.   Retroactive Forfeiture of Benefits

The Board ordered Phillips to participate in a vocational rehabilitation evaluation and Houston to pay TTD benefits during the course of that evaluation. On December 3, 1985, Houston petitioned for suspension of Phillips' TTD benefits, arguing that Phillips had failed to cooperate with the Board's order. The hearing was delayed and the Board did not issue a decision until November 12, 1986. At that time, the Board determined that Phillips had failed to cooperate with its order. It estimated that under ordinary circumstances, a decision would have been issued within 90 days. It then found that Phillips' TTD benefits should be forfeited for 90 days and

agreed that Phillips' compensation rate should have been increased in January 1977, the Board awarded interest on the difference between the appropriate compensation and the amount paid only from July 27, 1984, the date Houston received notice of Phillips' claim for increased benefits.

authorized Houston to treat the forfeited benefits as an advance on future PPD benefits owed.[7] The superior court reversed the Board's determination on the bases that there was not substantial evidence of Phillips' noncooperation and that retroactive suspension of his benefits was improper.

It is undisputed that the Board had authority to direct rehabilitation pursuant to former AS 23.30.040(e).[8] However, the Board's actions were proper only if Phillips did fail to cooperate and the Board had authority to penalize him for noncooperation. The superior court concluded that "evidence of any willful failure to cooperate is not substantial."

■ Phillips maintains that he intended to cooperate with the Board's order but that Houston unreasonably insisted that he be examined by a counselor he did not trust. He points out that he did indicate his willingness to be evaluated by a rehabilitation expert he considered unbiased but that the parties were unable to find a mutually agreeable counselor.

■ However, Phillips had alternatives to participating in the evaluation arranged by Houston. He could have obtained an evaluation by the Department of Vocational Rehabilitation at no cost to himself. He also could have arranged for a private evaluation, and he may have been eligible to tax the cost to the Second Injury Fund. *See* former AS 23.30.040(e). Either of these actions would have complied with the Board's order.

Although the evidence of Phillips' failure to cooperate is not unequivocal, there is substantial evidence to support the Board's determination that Phillips' outright refusal to be evaluated violated its order.[9] Therefore we must address the question of whether the Board could properly penalize Phillips by forfeiting his TTD benefits.

In *Bignell v. Wise Mechanical Contractors*, 651 P.2d 1163, 1167 (Alaska 1982), this court expanded the Board's discretion under former AS 23.30.040(e) by authorizing it to award TTD benefits during the period in which the employee participated in vocational rehabilitation, even if his or her condition had medically stabilized at a level of partial disability. Implicit in the *Bignell* rationale is the expectation that payment of TTD benefits to an employee such as Phillips is contingent upon that worker's cooperation with rehabilitation.[10] Thus, the Board clearly had authority to

7. The Board also found that Phillips had failed to cooperate with Houston's vocational rehabilitation efforts. However, the determining issue is whether Phillips failed to follow an order of the Board. Consequently, our analysis is limited to the narrow question of whether substantial evidence in the record supports the Board's determination that Phillips did not follow its order.

8. Former AS 23.30.040(e) stated:
The board may direct and provide the vocational retraining and rehabilitation of a permanently disabled person whose condition is a result of an injury compensable under this chapter by making cooperative arrangements with insurance carriers, private organizations and institutions or state or federal agencies.... The person being retrained or rehabilitated shall receive compensation from the second injury fund for maintenance, in the sum which the board considers necessary, during the period of retraining and rehabilitation, not exceeding $100 a month. The total expenditures for maintenance, training, rehabilitation and necessary transportation may not exceed $5,000 for one person.

This subsection was repealed in 1982. Ch. 93, § 27, SLA 1982.

9. We apply the substantial evidence standard of review to the Board's factual findings. Under this test, our inquiry is limited to whether "there is substantial evidence in light of the whole record that a reasonable mind might accept as adequate to support the board's conclusion." *Delaney v. Alaska Airlines*, 693 P.2d 859, 863 (Alaska 1985) (citing *Miller v. ITT Arctic Services*, 577 P.2d 1044, 1046 (Alaska 1978)) (footnote omitted). In applying this test, we will not independently reweigh the evidence. *Id.*

10. A determining factor in the outcome of *Bignell* was our recognition that our workers' compensation statutes define disability as a function of the injured employee's capacity to earn wages rather than as the level of medical impairment suffered by the employee. *See* AS 23.30.265(10). Therefore, payment of TTD benefits during the rehabilitation period is expected to provide an incentive for the injured employee to pursue vocational rehabilitation, thereby mitigating his or her damages. *Bignell*, 651 P.2d at 1167–68.

terminate Phillips' TTD benefits for failure to cooperate with its rehabilitation order.

However, the Board did not merely terminate Phillips' TTD benefits, but allowed Houston to recover benefits it had paid prior to the Board's decision. The superior court labelled this suspension a "penalty" and reversed the Board's order.

We have previously considered retroactive forfeiture of benefits under AS 23.30.095(d), which authorizes penalties against claimants who unreasonably refuse to submit to medical or surgical treatment.[11] *Metcalf v. Felec Services*, 784 P.2d 1386, 1388–89 (Alaska 1990). We concluded that the Board may not retroactively ratify a unilateral suspension of benefits. Although we are not afforded clear guidance of the punitive measures available to the Board under the applicable version of AS 23.30.040(e), the employee's position is analogous to his or her position under AS 23.30.095(d).[12] Board review provides an important procedural protection to employees who may not otherwise be aware that their entitlement to certain benefits is at risk. Therefore, we hold that the Board's retroactive forfeiture of benefits was improper.

In reaching this conclusion, we reject Houston's argument that employees will take advantage of the preclusion on retroactive suspension to prolong their disability, thus failing to mitigate their damages. Upon discovery of noncooperation, employers may immediately petition the Board to terminate payment of TTD benefits. Unreasonable delays will be prevented by the time limits imposed on Board action by the Alaska Administrative Code, *see* 8 AAC 45.070 (1991), and by the Board's policy of not granting continuances, postponements, or cancellations without good cause, 8 AAC 45.074 (1991).

The superior court's determination that there was not substantial evidence in the record to support the Board's conclusion that Phillips had unreasonably failed to cooperate with its order is reversed. The court's determination that the Board's retroactive suspension of benefits was improper is affirmed on the grounds discussed above.

AFFIRMED in part, REVERSED in part and REMANDED.

---

11. The pertinent provision states that the "board may *by order* suspend the payment of *further* compensation while the refusal continues...." AS 23.30.095(d) (emphasis added).

12. The standard of review for decisions which rest on an agency's construction of a statute which is not technical and does not require agency expertise is the substitution of judgment test. *Kjarstad v. State*, 703 P.2d 1167, 1170 (Alaska 1985). Therefore, we will apply our independent judgment in determining whether the Board had authority to forfeit Phillips' TTD benefits.